● **ORIGINAL** ●

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY D. ALBRIGHT, ET AL. | : | CIVIL NO. 1: CV-00-0878 |
| **AND** | : | |
| RICKEY A. BECHTEL | : | CIVIL NO. 1:CV-01-789 |
| **Plaintiffs,** | : | |
| v. | : | |
| DANIEL A. VIRTUE, ET AL. | : | JUDGE SYLVIA RAMBO |

**FILED MAR 2 1 2002**
PER
HARRISBURG, PA DEPUTY CLERK

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE CASES

The provision for consolidation of cases is found Fed.R.Civ.P. 42. Specifically, under Rule 42(a), a court may consolidate actions when there are common questions of law or fact to avoid unnecessary costs or delay, and to promote judicial economy. Schneck v. International Business Machines Corporation, 1996 U.S. Dist. Lexis 10126 *3 (a copy of this decision is attached hereto as Exhibit 1); Scardino v. Amalgamated Bank of New York, 1994 U.S. Dist. Lexis 10670 * 6 (a copy of this decision is attached hereto as Exhibit 2). Rule 42(a) bestows upon a district court broad power to consolidate causes for a trial as it may deem proper in the administration of justice. Scardino v. Amalgamated Bank of New York, 1994 U.S. Dist. Lexis 10670 *6. A court may consolidate causes for a trial either at the request of a party or upon its own initiative. Id.

The party moving for consolidation bears the burden of showing the existence of common factual or legal issues. Schneck v. International Business Machines Corporation, 1996 U.S. Dist. Lexis 10126 *3. To meet this burden, the party must provide to the court with specific facts supporting consolidation. Id. The critical facts and factual issues are unique to each case and thus, must be viewed on a case-by-case

basis. Id. at * 18. The law and the evidence of the cases is the same. See Kelly v. Greer, 295 F.2d 18, 20 (3rd Cir. 1961). Moreover, the same circumstantial evidence that is proposed to be litigated will be applicable to both cases. Id.

Applying the above standards to the cases at issue, e.g. *Jeffrey D. Albright, et. al. v. Daniel A. Virtue, et al, Rickey A. Bechtel v. Daniel A. Virtue, et al,* it is abundantly clear that consolidation is appropriate. The same collective bargaining agreement provisions are involved as well as the same Union and Employer are involved. Furthermore, the same collective bargaining agreement, same terminal closure, time frame, recall and grievance timeliness issues and same call board and related issues are involved.

## CONCLUSION

Common questions of law or fact are involved between Plaintiff Albright and Bechtel and Defendant Virtue. Consolidation is appropriate to avoid unnecessary costs or delay, and to promote judicial economy. Each case involves the same question of law, evidence, including circumstantial evidence. Wherefore, Plaintiffs respectfully request that this Honorable Court grant Plaintiff's Motion to Consolidate.

Respectfully submitted,

Robert S. Mirin, ID No. 25305
**AHMAD & MIRIN**
8150 Derry Street
Harrisburg, PA 17111
(717) 909-4343

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2002, a copy of *Brief in Support of*

*Plaintiff's Motion to Consolidate Cases* was served first-class mail, postage prepaid, on the

following:


James A. McCall
Special Counsel
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C., 2001

Ira Weinstock
800 N.2nd Street
Harrisburg, PA 17102

Vincent Candiello
**MORGAN, LEWIS & BOCKIUS, L.L.P.**
Once Commerce Square
417 Walnut St.
Harrisburg, PA 17101-1904

Joseph E. Santucci, Jr.
Mary D. Walsh
**MORGAN, LEWIS & BOCKIUS, L.L.P.**
111 Pennsylvania Av., N.W.
Washington D.C. 2004


Chris Sabas
Law Clerk
**AHMAD & MIRIN**
8150 Derry St.
Harrisburg, PA 17111
(717) 909-4343

MSN Home | My MSN | | Web Search | Shopping | Money | People & Chat    Sign Out

 **from Pink Slip to Payday**
Search 800,000 jobs free now                                        msn

Search :

 **Hotmail**   Home | Inbox | Compose | Address Book   Options  Help

Calenda

shiraz43@hotmail.com

[ Save Address(es) ] [ Block ]                    **Previous** **Next** | **Close**

Free Ne
Special I
POP Mai
Send as
Voice e
Express

| From : | LexisNexis(TM) Print Delivery <lexisnexis@prod.lexisnexis.com> |
| To : | |
| Subject : | LexisNexis(TM) Email Request (969:0:49079457) |
| Date : | Thu, 14 Mar 2002 09:38:33 -0500 (EST) |

[ Reply ] [ Reply All ] [ Forward ] [ Delete ] [ Put in Folder... ▼ ]    **Printer Friendly Version**

102R2F

```
Print Request:    LEXSEE

Time of Request: March 14, 2002   09:38 am EST

Number of Lines: 759
Job Number:      969:0:49079457

Client ID/Project Name:

Research Information:

Lexsee 1996 U.S. Dist. LEXIS 10126

Note:
```

                                                              PAGE
1

              LEXSEE 1996 U.S. Dist. LEXIS 10126

       BEVERLY SCHNECK, WILLIAM SCHNECK, Plaintiffs, v.
   INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

                    Civ. No. 92-4370 (GEB)

      UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

                  1996 U.S. Dist. LEXIS 10126

                   June 21, 1996, Decided

                   June 24, 1996, FILED

NOTICE:
 [*1]   NOT FOR PUBLICATION

DISPOSITION:
Defendant's motion for summary judgment granted. The above-captioned action in
its entirety dismissed.

1

CASE SUMMARY

PROCEDURAL POSTURE: Plaintiff injured consumers brought a motion in the court,
seeking to consolidate 10 keyboard products liability cases brought against
defendant manufacturer.

OVERVIEW: The consumers were individuals who had brought actions alleging
injuries resulting from "repetitive stress" encountered in the use of equipment
made by the manufacturer. The consumers sought to consolidate several actions,
pursuant to Fed. R. Civ. P. 42(a), because they allegedly involved common issues
of law, nearly identical fact witnesses, similarly designed equipment,
substantially similar etiology of all injuries, and the same counsel on the part
of both sets of parties. The court denied the consumer's motion. The consumer's
did not meet their burden of showing the existence of common factual or legal
issues. The court held that the evidence that was to be presented by the defense
was almost wholly distinct in each case and was to involve testimony by the
consumers, their family members, their unions, their doctors, and their medical
experts. In addition, the consumers represented diverse occupations and used
diverse types of the manufacturer's equipment. The consumers' proposed
bifurcation solution was also untenable because bifurcation would necessarily
result in duplicative presentation of evidence to different juries as to issues
that were incapable of severance.

OUTCOME: The court denied the consumers' motion to consolidate.

CORE CONCEPTS

Civil Procedure : Trials : Consolidation of Actions
Under Fed. R. Civ. P. Rule 42(a), a court may consolidate actions when there are
common questions of law or fact to avoid unnecessary costs or delay, and to
promote judicial economy. The party moving for consolidation bears the burden of
showing the existence of common factual or legal issues. To meet this burden,
the movant must supply the court with assistance and marshal facts supporting

                                                                          PAGE
2
                      1996 U.S. Dist. LEXIS 10126, *1

consolidation. The special underlying facts or each case must be inspected with
"close attention."

Civil Procedure : Trials : Consolidation of Actions
The mere existence of common issues does not require consolidation pursuant to
Fed. R. Civ. P. 42(a). The savings of time and effort gained through
consolidation must be balanced against the inconvenience, delay or expense that
might result from simultaneous disposition of the separate actions. Moreover,
considerations of convenience and economy must yield to a paramount concern for
a fair and impartial trial." Indeed, consolidation where prejudice results to a
defendant amounts to an abuse of discretion. Finally, consolidation is
inappropriate where there is a likelihood of confusion in the minds of jurors
due to the introduction of evidence not relevant to the other issues in the
consolidation.

Civil Procedure : Class Actions : Prerequisites
Civil Procedure : Trials : Consolidation of Actions
Because of the magnitude of the exposure, the complexity of management, and the
predominance of individual issues, aggregation, whether through consolidation or
class action treatment, may not be appropriate for some litigation. In general,
those mass torts in which general causation has become relatively clear over
time are appropriate for consolidations or even class action treatment. Fairness
may demand that mass torts with few prior verdicts or judgments be litigated
first in small units -- even single-plaintiff, single-defendant trials -- until
general causation, typical injuries, and levels of damages become established.
Thus, "mature" mass torts may call for procedures that are not appropriate for
incipient mass tort cases.

Civil Procedure : Venue & Choice of Forum : Coordination for Trial

Civil Procedure : Trials : Consolidation of Actions
Litigation is "mature" if through previous cases (1) discovery has been
completed, (2) a number of verdicts have been received indicating the value of
claims, and (3) plaintiffs' contentions have been shown to have merit.
Typically, in such litigation little or no new evidence is likely, appellate
review of novel legal issues has been completed, and a full cycle of trial
strategies has been exhausted.

Civil Procedure : Trials : Consolidation of Actions
Because premature consolidation will unfairly prejudice defendants whose
liability, if any, for a novel tort remains highly speculative, the lack of
evidence clearly establishing general causation is a critical factor strongly
counseling against consolidation.

Civil Procedure : Trials : Consolidation of Actions
In the absence of well-established causation, consolidation threatens the
integrity of the judicial system and the accuracy of the system's results.
Indeed, the Manual for Complex Litigation points out that empirical research
suggests that decisions to consolidate and bifurcate trials may affect jury
decisions about liability or damages. Thus, a jury will have greater difficulty
in weighing the evidence and reaching a fair conclusion when evidence supporting
general causation is speculative and highly contested.

Civil Procedure : Trials : Consolidation of Actions
Consolidation is never appropriate if the fair and impartial administration of
justice would be jeopardized. Indeed, the systemic urge to aggregate litigation
                                                                    PAGE
3
                    1996 U.S. Dist. LEXIS 10126, *1

must not be allowed to trump our dedication to individual justice, and we must
take care that each individual plaintiff's -- and defendant's cause not be lost
in the shadow of a towering mass litigation. In short, consolidation can result
in the reference to "mass torts" becoming self-fulfilling prophesy where
individual issues are diminished at the expense of due process rights.

Civil Procedure : Trials : Separate Trials
Bifurcation of issues at trial is governed by Fed. R. Civ. P. 42(b).

Civil Procedure : Trials : Separate Trials
The court, in furtherance of convenience or to avoid prejudice, or when separate
trials will be conducive to expedition and economy, may order a separate trial
of any claim, cross claim, counterclaim, or third-party claim, or of any
separate issue or of any number of claims, cross claims, counterclaims,
third-party claims, or issues, always preserving inviolate the right of trial by
jury as declared by the Seventh Amendment to the Constitution or as given by a
statute of the United States. Fed. R. Civ. P. 42(b).

Civil Procedure : Trials : Separate Trials
The decision to bifurcate vel non is a matter to be decided on a case-by-case
basis and must be subject to an informed discretion by the trial judge in each
instance. Bifurcation is the exception, not the rule, and separation of issues
for trial is not to be routinely ordered.

Civil Procedure : Trials : Separate Trials
Bifurcation is permitted only when separate trials would further convenience or
avoid prejudice, and the touchstone in the decision whether or not to bifurcate
is to avoid prejudice, not to create it. In short, considerations of economy of
time, money and convenience of witnesses must yield at all times to the
paramount consideration of ensuring a fair and impartial trial for all
litigants. The party seeking bifurcation has the burden to demonstrate that
bifurcation will lessen delay, expense, and inconvenience to all parties, and
must further show that it will suffer prejudice if bifurcation is not permitted.
In cases where the issues, witnesses and documentary evidence central to both
claims overlap or where the party opposing bifurcation will be prejudiced
thereby, bifurcation must be denied.

Civil Procedure : Trials : Separate Trials
Constitutional Law : Trial by Jury in Civil Actions
The express terms of Fed. R. Civ. P. 42(b) caution that, in deciding whether
bifurcation is appropriate, a court must always preserve inviolate the right of
trial by jury as declared by the Seventh Amendment to the Constitution.

Civil Procedure : Trials : Separate Trials
Constitutional Law : Trial by Jury in Civil Actions
The United States Supreme Court has explained that, in allowing bifurcation, a
court must ensure that issues are "so distinct and separable" that they may be
tried separately without injustice. Thus, for example, if the question of
damages is so interwoven with that of liability that the former cannot be
submitted to the jury independently of the latter without confusion and
uncertainty, this would amount to a denial of a fair trial. This limitation on
the use of bifurcation is a recognition of the Seventh Amendment guarantee to
have only one jury pass on a common issue of fact. The practical basis
underlying this guarantee is that two different juries are precluded from
reaching inconsistent results. The guarantee also prevents duplicative evidence,
                                                                          PAGE
4
                        1996 U.S. Dist. LEXIS 10126, *1

increased expense, inconvenience, and delay that would inhibit expedition and
economy of the litigation. Federal courts have therefore firmly established that
bifurcation is inappropriate when the issues sought to be tried separately are
not distinct and incapable of severance.

Torts : Products Liability : Strict Liability
The New Jersey Supreme Court has emphasized that in applying risk-utility
analysis to determine whether a product is defective, the focus must necessarily
be on the specific product before the court and the danger or risk of injury
presented by that product. Courts from other jurisdictions have recognized, the
meaning of "injury" must necessarily be defined in reference to the injury
involved in the action.

COUNSEL:
For BEVERLY SCHNECK, WILLIAM SCHNECK, plaintiffs: ARNOLD CARL LAKIND, SZAFERMAN,
LAKIND, BLUMSTEIN, WATTER & BLADER, P.C., LAWRENCEVILLE, NJ.

For INTERNATIONAL BUSINESS MACHINES CORPORATION, defendant: JOHN H. McKEON, JR.,
CONRAD, O'BRIEN, GELLMAN & ROHN, ESQS., MOORESTOWN, NJ.

JUDGES:
GARRETT E. BROWN, JR., U.S.D.J.

OPINIONBY:
GARRETT E. BROWN, JR.

OPINION:

    MEMORANDUM OPINION

BROWN, District Judge

    This matter comes before the Court on plaintiffs' motions to consolidate 10
keyboard products liability cases pending in the United States District Court
for the District of New Jersey, Trenton Vicinage. Plaintiffs seek to consolidate
these cases for a single, liability-only trial on their design defect and
failure to warn claims. For the reasons set forth in this Memorandum Opinion,
plaintiffs' motions will be denied.

I. BACKGROUND

    Plaintiffs are individuals who have brought actions alleging injuries
resulting from "repetitive stress" encountered in the use of equipment

manufactured or distributed by defendant, International Business [*2] Machines Corporation ("IBM"). These so-called "repetitive stress injuries" ("RSI") include "carpal tunnel" syndrome, a malady of the hands and wrists, and a diverse array of so-called RSI injuries, including ganglion cyst, de Quervain's syndrome, tendinitis, epicondylitis, cervical radiculopathy, ulnar nerve dysfunction, herniated disc, tenosynovitits, and bilateral osteoarthritis. Plaintiffs seek to consolidate these actions because they allegedly involve, inter alia, common issues of law, nearly identical fact witnesses, similarly designed equipment, substantially similar etiology of all injuries, and the same counsel for plaintiffs and defendants. n1 Consolidation is also appropriate, according to plaintiffs, because "[a] single trial will resolve, once and for all, the most hotly contested issue in these cases, i.e., whether the IBM

PAGE 5

1996 U.S. Dist. LEXIS 10126, *2

keyboard is defective. Moreover, the narrow focus of the proofs will eliminate any prejudice to IBM, inasmuch as testimony about individual injuries and damages will be non-existent." Plaintiffs' Brief at 1-2.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 The cases that are the subject of this motion are: Bogdan v. IBM, Civ. No. 94-4538 (AET); Clark v. IBM, Civ. No. 94-5292 (GEB); Daniels v. IBM, Civ. No. 95-2527 (AET); Miller v. IBM, Civ. No. 93-4849 (GEB); Parker v. IBM, Civ. No. 92-4895 (AET); Prezant v. IBM, Civ. No. 95-1827 (MLP); Schneck v. IBM, 92-4370 (GEB); Serronico v. IBM, Civ. No. 94-2275 (MLP); Shaw v. IBM, Civ. No. 93-1801 (AET) Thomas-Ross v. IBM, Civ. No. 94-2487 (AET).

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*3]

II. DISCUSSION

  A. CONSOLIDATION

   Under Rule 42(a), a court may consolidate actions when there are common questions of law or fact to avoid unnecessary costs or delay, and to promote judicial economy. FED. R. CIV. P. 42(a); Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 339 F.2d 673 (3d Cir. 1964), cert. denied, 382 U.S. 812, 15 L. Ed. 2d 60, 86 S. Ct. 23 (1965); Kelly v. Greer, 295 F.2d 18, 20 (3d Cir. 1961); Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 80 (D.N.J. 1993). The party moving for consolidation bears the burden of showing the existence of common factual or legal issues. Debruyne v. National Semiconductor Corp., 11 F.3d 368, 373 (2d Cir. 1993). To meet this burden, the movant must supply the court with assistance and "marshall facts supporting consolidation." Schacht v. Javits, 53 F.R.D. 321, 325 (S.D.N.Y. 1971). The special undelying facts or each case must be inspected with "close attention." Katz v. Realty Equities Corp. of New York, 521 F.2d 1354, 1361 (2d Cir. 1975).

   The mere existence of common issues, however, does not require consolidation. Waste Distillation Technology, Inc. v. Pan American Resources, Inc., 775 [*4] F. Supp. 759, 761 (D. Del. 1991); Rohm & Haas Co. v. Mobil Oil Corp., 525 F. Supp. 1298, 1309 (D. Del. 1981). The savings of time and effort gained through consolidation must be balanced against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions. Waste Distillation, 775 F. Supp. at 761; Rohm & Haas Co., 525 F. Supp. at 1309. Moreover, "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." Debruyne v. National Semiconductor Corp., 11 F.3d 368, 373 (2d Cir. 1993). Indeed, consolidation where prejudice results to a defendant amounts to an abuse of discretion. Arnold v. Eastern Airlines, Inc., 712 F.2d 899, 906 (4th Cir. 1983), cert. denied, 464 U.S. 1040, 79 L. Ed. 2d 168, 104 S. Ct. 703 (1984). Finally, consolidation is inappropriate where there is a likelihood of confusion in the minds of jurors due to the introduction of evidence not relevant to the other issues in the consolidation. Liberty Lincoln Mercury, 149 F.R.D. at 81-82.

Plaintiffs have not met their burden here. To begin with, plaintiffs have not provided this Court with facts from any of these cases to support a finding [*5] that factual commonality exists. For example, plaintiffs' assertion that 10 cases involving entirely different worksites share "common proofs with regard to

the ergonomic and other characteristics of plaintiff's workplace", see Plaintiffs' Brief at 13, does not withstand scrutiny. Each of the plaintiffs worked at one or more different worksites, under different conditions, and each of the plaintiffs received, at different times, varying amounts of the kinds of information plaintiffs contend should have been included in a warning.

Plaintiffs' assertion that "the expert disclosures and their reports" are "substantially identical" is similarly misleading. The reports of medical experts -- the only kind of expert plaintiffs have consistently offered in these cases -- address plaintiff-specific issues in every case. In fact, the reports of Dr. Mohr (plaintiffs' medical expert in 9 of the 10 cases) exclusively address the individual plaintiffs. As to those experts whose reports are the same in each case, plaintiffs gloss over the fact that IBM cross-examined these experts by reference to different facts of the different cases in which they have been offered a witnesses.

Many of plaintiffs' [*6] other so-called common issues are either uncontested or lack legal significance. For example, plaintiffs claim that there exists a common issue of "evidence with regard to defendant's warnings against so-called 'RSI' or the lack thereof," in cases where IBM has never disputed that it did not supply "warnings" with its products. Plaintiffs do not explain how this non-issue creates a need for consolidation. Nor do plaintiffs attempt to explain how the "fact" that "all plaintiffs used equipment manufactured by IBM" has any significance where as here, that equipment included such diverse products as card punch machines, electric typewriters, and computer keyboards. n2

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 Most of plaintiffs' other so-called "common questions of fact" are simply listings of evidence, grouped in categories which are largely overlapping. For example, plaintiffs list "state of the art proofs" and "epidemiological proofs" as separate "common questions" despite their reliance on epidemiological studies as state of the art evidence. These same studies are also used to prove IBM's alleged "knowledge" for the propensity of each of the products to cause injury (listed as yet another "common question of fact"). See Plaintiffs' Brief at 8.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*7]

Of far more significance than any common fact or issue plaintiffs might be able to identify is the abundance of individual issues unique to each plaintiff. Plaintiffs' "common proofs" in these cases have essentially been limited to documents, occasional testimony of an IBM employee (typically by deposition), and testimony on direct examination of certain experts who may or may not be called as witnesses. In contrast, according to IBM, the focus of its defense in every case will be on plaintiff-specific issues, including: the existence and nature of plaintiff's alleged injury; plaintiff's relevant medical history; plaintiff's work environment and usage of the particular product claimed to have caused injury; and the timing and nature of information furnished to each plaintiff from a variety of sources concerning the alleged risk of injury associated with IBM products. Thus, the evidence is almost wholly distinct in each case and will typically involve testimony by the plaintiffs, their family members, their unions, their doctors, and their medical experts. Even as to any so-called "generic" experts, such as Dr. Punnett, the questioning would

PAGE
7

1996 U.S. Dist. LEXIS 10126, *8

inevitably differ depending on the particular [*8] alleged injury, the
particular product, the nature and extent of plaintiff's product use n3 and,
with respect to allegedly-required warnings, the nature and sources of
information already available to the plaintiff.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 The report of Dr. Punnett, for example, states that certain studies she
reviewed provide no evidence as to whether there is a risk associated with fewer
than 4 hours per day of keyboard use. Thus, depending upon the actual keyboard
use of a particular plaintiff, testimony to this effect by Dr. Punnett can
undermine a claim that keyboard use was the "specific cause" of a plaintiff's
injury. See Affidavit of Joseph A. D'Avanzo Aff. ("D'Avanzo Aff.") P 11, Exh. L.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

    In short, these cases present precisely the same kinds of factual diversity
which were present in Debruyne, where the Second Circuit found the trial
court's consolidation of cases to be "a sufficiently clear abuse of discretion
to warrant mandamus relief." 11 F.3d at 373. Each of the issues upon which the
Debruyne court [*9] focused -- worksite, occupation, "time of exposure," and
nature of injury n4 -- applies equally on these facts and, as shown below,
plaintiffs' effort to explain away each factor is unpersuasive.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 The Debruyne court cited the status of discovery and whether plaintiffs were
all represented by the same counsel as less important factors.  Id. at 374.
Here, of course, plaintiffs' sole stated purpose for consolidation is their
proposed single trial, and these factors would seem to have no importance at
all.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

    Further, plaintiffs' statement that "nearly all" plaintiffs fall into the
loosely defined category of "typists or data entry clerks" fails to consider the
fact that plaintiffs' diverse occupations have included telemarketer, accounts
receivable clerk, directory-assistance operator, and clerk stenographer.
Similarly, the equipment used by the plaintiffs included such diverse products
as a cash register, card-punch machines, electric typewriters, and
personal-computer keyboards. Moreover, none of the [*10] plaintiffs worked at
the same worksite, and plaintiffs used the IBM products at significantly
different time periods.

    As in Debruyne, the claimed injuries run the gamut of "so-called repetitive
stress injuries" which the Debruyne court described as a term "of such
generality that it covers a number of different ailments for each of which there
are numerous possible causes." 11 F.3d at 373. Plaintiffs' argument that
consolidation can be justified by this grouping of disparate injuries under the
"RSI" umbrella, a grouping which IBM contends lack medical or legal
significance, was squarely rejected by the Debruyne court.

    In addition to these factors, a host of other plaintiff-specific issues
permeate these cases. For example, one of plaintiff's principal claims is that
IBM should have provided warnings about its products and instructions about its
                                                                        PAGE
8

1996 U.S. Dist. LEXIS 10126, *10

products and instructions on how to avoid the various injuries that plaintiffs
allege. In each case, there is a fundamental issue as to whether the absence of
a warning had any causal relation to the plaintiff's injury. Each plaintiff had
varying amounts of information about "RSI" from different sources and acquired
that information [*11] at different times. Moreover, the conduct of the

plaintiffs, both before and after acquiring such information, must be separately presented and evaluated to determine whether any specific information a jury may believe should have been included in a warning would have made any difference.

Moreover, plaintiffs' reliance upon other decisions permitting consolidation in "RSI" litigation is misplaced. In Cunningham v. Computer Machines Corp., Civ. No. 92-3191 (D.N.J. July 21, 1995) (AET), the court ruled that consolidation of four actions was appropriate, where plaintiffs shared a common employer and worksite, and used the same equipment. Similarly, in Dennis v. Pertec Computer Corp., Civ. No. 90-5073 (D.N.J. Nov. 21, 1995) (AET), the court refused to sever eleven previously consolidated actions, where plaintiffs had the same employer, worksite, occupation, and used the same equipment. Finally, the cases consolidated in Russek v. Unisys Corp., Civ. No. 93-5738 (D.N.J. Mar. 3, 1994) (JEI), involved plaintiffs who used the same machines at the same worksite. The court also stressed the fact that no discovery had been conducted and expressly left open whether the cases would [*12] remain consolidated for purposes of trial.

Plaintiffs' reliance on asbestos cases is equally misplaced. In contrast to the injuries alleged in asbestos cases, which have been repeatedly linked in past litigation and in scientific studies to asbestos exposure, the relation between "keyboard use" and the varying and diffuse ailments involved in these cases has never been established in a courtroom. The guidelines set forth in the Federal Judicial Center's Manual for Complex Litigation ("Manual") recognize a distinction between these very different kinds of litigation:

Because of the magnitude of the exposure, the complexity of management, and the predominance of individual issues, aggregation, whether through consolidation or class action treatment, may not be appropriate for some litigation. In general, those mass torts in which general causation has become relatively clear over time are consolidations or even class action treatment. Fairness may demand that mass torts with few prior verdicts or judgments be litigated first in small units -- even single-plaintiff, single-defendant trials -- until general causation, typical injuries, and levels of damages become established. [*13] Thus, "mature" mass torts like asbestos or Dalkon Shield may call for procedures that are not appropriate for incipient mass tort cases, such as those involving injuries arising from new products, chemical substances, or pharmaceutical.

MANUAL FOR COMPLEX LITIGATION 322 (3d ed. 1995). The Manual then defines a "mature" tort:

Litigation is "mature" if through previous cases (1) discovery has been completed, (2) a number of verdicts have been received indicating the value of claims, and (3) plaintiffs' contentions have been shown to have merit . . . . Typically, in such litigation little or no new evidence is likely, appellate review of novel legal issues has been completed, and a full cycle of trial strategies has been exhausted; examples include the asbestos and Dalkon Shield Litigation.

Id. at 322 n. 1057.

                                                                              PAGE
9
                            1996 U.S. Dist. LEXIS 10126, *13


These guidelines were applied by Judge Hurley in response to the similar motion recently filed by plaintiffs' New York counsel in the Eastern District of New York. On November 15, 1995, the court issues an Order requiring any motion to consolidate to address the issue of compliance with the mature-tort requirements set forth in the Manual for Complex [*14] Litigation. n5

- - - - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - - - -

n5 The court's order specified that the following points must be addressed in any subsequent motions to consolidate:



1) What are the common issues of law and fact? What additional information, or
changed circumstances, have materialized since the Second Circuit decision was
issued vacating the prior consolidation orders?

2) How will the goals sought to be advanced by the aggregation of actions be
served by consolidation of hundreds of RSI claims at the point in the
litigation?

D'Avanzo Aff. P 25, Exh. K.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

   Consolidation of this litigation is inappropriate under the Manual in that
discovery in many of the cases is far from complete, plaintiffs have not
received any verdicts in their favor indicating the value of "RSI" claims, and
plaintiffs have yet to demonstrate the merit of their contentions in any forum.
In addition, appellate review of novel legal issues has barely begun.

   Because premature consolidation will unfairly prejudice defendants whose
liability, if any, for [*15] a novel tort remains highly speculative, the
Manual recognizes that a lack of evidence clearly establishing general causation
is a critical factor strongly counselling against consolidation. Id. Thus, in In
re N.Y. Asbestos Litig., 145 F.R.D. 644 (S.D.N.Y. 1993), the court consolidated
that claims of 12 of 13 asbestos plaintiffs, noting that "with the exception of
[one plaintiff's] gastric cancer, all the diseases suffered by the plaintiffs
have been unquestionably linked to exposure to asbestos." Id. at 651.
Significantly, the court did not consolidate the other plaintiff's claim because
"whether asbestos exposure is associated with other types of cancer [apart from
lung cancer and mesothelioma] remains a matter of considerable debate in the
medical and scientific communities." Id. at 654-55. See In re N.Y. Asbestos
Litig., 149 F.R.D. 490, 498 (S.D.N.Y. 1993) (consolidation was supported by the
fact that all but one plaintiff alleged "mesothelioma, a type of cancer so
closely linked to asbestos exposure that it is considered a 'signature' disease
of exposure to asbestos"). Given these clear and recognized distinctions
between asbestos and "RSI" litigation, [*16] the asbestos cases upon which
plaintiffs so heavily rely, such as Wilson v. Johns-Manville Sales Corp., 107
F.R.D. 250 (S.D. Tex. 1985), are simply inapposite.

   In the absence of well-established causation, consolidation threatens the
integrity of the judicial system and the accuracy of the system's results.
Indeed, the Manual for Complex Litigation points out that "empirical research
suggests that decisions to consolidate and bifurcate trials may affect jury
decisions about liability or damages." MANUAL FOR COMPLEX LITIGATION 322 n.

                                                                          PAGE
10

                          1996 U.S. Dist. LEXIS 10126, *16

1056. n6 Thus, a jury will have greater difficulty in weighing the evidence and
reaching a fair conclusion when evidence supporting general causation is
speculative and highly contested.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 The Manual cites to a study in which 66 juries were presented with identical
evidence under four conditions: one plaintiff only; four plaintiffs; and four
plaintiffs representing hundreds of others. The study's authors found that "as
the number of (non-trial) plaintiffs represented by those plaintiffs presented
at trial increased, juries were more likely to blame the defendant for those
injuries." See Irwin A. Horowitz and Kenneth S. Bordens, Mass Tort Civil
Litigation: The Impact of Procedural Changes on Jury Decisions, 73 JUDICATURE
22, 24 (1989).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*17]

   Even if judicial efficiency would be advanced by consolidation of these cases

-- which this Court finds is not the case here -- consolidation is never appropriate if the fair and impartial administration of justice would be jeopardized. See, e.g., Malcolm v. National Gypsum Co., 995 F.2d 346, 350 (2d Cir. 1993); Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir.), cert. denied, 498 U.S. 920, 112 L. Ed. 2d 250, 111 S. Ct. 297 (1990) (obligation of courts to deliver justice cannot ever be sacrificed for the benefit of cheaper and more rapid dispositions). Indeed, "the systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's -- and defendant's cause not be lost in the shadow of a towering mass litigation." In re brooklyn Navy Yard Asbestos Litig., 971 F.2d 831, 853 (2d Cir. 1992). In short, consolidation can result in the reference to "mass torts" becoming self-fulfilling prophesy where individual issues are diminished at the expense of due process rights. Debruyne, 11 F.3d at 374.

Plaintiffs simply cannot meet their burden of establishing that these cases meet the requisites for consolidation [*18] under standards consistently applied by the federal judiciary. The critical facts and factual issues are unique to each case, and a consolidation of these individual factual issues would result in inevitable jury confusion and a trial setting highly prejudicial to IBM.

To avoid application of the above-mentioned principles mandating denial of their consolidation motion, plaintiffs propose to bifurcate the liability issue into two supposedly distinct issues. However, plaintiffs' brief is far from clear as to precisely how this proposal would work beyond stating that the jury in the initial "single" trial would determine "whether the IBM keyboard is defective" due to "design defect" or "failure to warn." They state that "testimony about individual injuries will be non-existent" and the causation question will be limited to the "possibility that keyboards may cause one of a variety of injuries to the upper extremities" (i.e., any one but not necessarily more than one of the many injuries grouped by plaintiffs as "RSI"). All IBM discovery would apparently be precluded until this proposed trial has taken place. Plaintiffs' Brief at 1.

The remaining issues -- which plaintiffs concede [*19] are specific to each
                                                                              PAGE
11
                        1996 U.S. Dist. LEXIS 10126, *19

of the 10 plaintiffs -- would then be the subject of what plaintiffs puzzlingly refer to as "a streamlined trial." Since the remaining issues in any one case would have no relevance to those in any other case, plaintiffs presumably mean that there would be 10 separate "streamlined" trials.

However defined, plaintiffs' "bifurcation" raises a host of problems and solves none of those it purports to address. No matter how it is implemented, bifurcation will necessarily result in duplicative presentation of evidence to different juries as to issues which are incapable of severance.

Bifurcation of issues at trial is governed by FED. R. CIV. P. 42(b), which provides:

the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

FED. [*20] R. CIV. P. 42(b). The Third Circuit has explained that "the decision to bifurcate vel non is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978), cert. denied, 439 U.S. 955, 58 L. Ed. 2d 346, 99 S. Ct. 354 (1978). Bifurcation is the

exception, not the rule, and "'separation of issues for trial is not to be
routinely ordered.'" Id. (quoting Advisory Committee's Note to the 1966
Amendment to Rule 42(b), 39 F.R.D. 113).

   Bifurcation is permitted only when separate trials would further convenience
or avoid prejudice, Miller v. New Jersey Transit Auth. Rail Operations, 160
F.R.D. 37, 40 (D.N.J. 1995), and the touchstone in the decision whether or not
to bifurcate is "to 'avoid prejudice,' not to create it." U.S. Gypsum Co. v.
Schiavo Bros., Inc., 668 F.2d 172, 181 (3d Cir. 1981), cert. denied, 456 U.S.
961, 72 L. Ed. 2d 485, 102 S. Ct. 2038 (1982). In short, considerations of
economy of time, money and convenience of witnesses must yield at all times to
the paramount consideration of ensuring a fair and impartial trial for all
litigants. Miller, 160 F.R.D. at 41; Moss v. Associated [*21]   Transp., Inc.,
344 F.2d 23, 26 (6th Cir. 1965). The party seeking bifurcation has the burden to
demonstrate that bifurcation will lessen delay, expense, and inconvenience to
all parties, and must further show that it will suffer prejudice if bifurcation
is not permitted. Miller, 160 F.R.D. at 40. In cases "where the issues,
witnesses and documentary evidence central to both claims overlap or where the
party opposing bifurcation will be prejudiced thereby,'" bifurcation must be
denied. Monaghan v. SZS 33 Assocs., L.P., 827 F. Supp. 233, 245 (S.D.N.Y.
1993).

   The express terms of Rule 42(b) caution that, in deciding whether bifurcation
is appropriate, a court "must always [preserve] inviolate the right of trial by
jury as declared by the Seventh Amendment to the Constitution." The United
States Supreme Court has explained that, in allowing bifurcation, a court must
ensure that issues are "so distinct and separable" that they may be tried
separately "without injustice." Gasoline Products Co. v. Champlin Refining Co.,
283 U.S. 494, 500, 75 L. Ed. 1188, 51 S. Ct. 513 (1931); see In re Lower Lake
                                                                    PAGE
12
                        1996 U.S. Dist. LEXIS 10126, *21

Erie Iron Ore Antitrust Litig., 998 F.2d 1144, 1182 (3d Cir.), cert. dismissed
sub nom., 114 S. Ct. [*22] 625 (1993). Thus, for example, if the "question of
damages . . . is so interwoven with that of liability that the former cannot be
submitted to the jury independently of the latter without confusion and
uncertainty, [this] would amount to a denial of a fair trial." Gasoline Products
Co., 283 U.S. at 500; In re Lower Lake Erie Iron Antitrust Litig., 998 F.2d at
1182. this limitation on the use of bifurcation is a recognition of the Seventh
Amendment guarantee to have only one jury pass on a common issue of fact.
McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 305 (5th Cir. 1993); see also In
re Lower Lake Erie Iron Ore Antitrust Litig., 998 F.2d at 1182; Matter of
Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1302-03 (7th Cir.), cert. denied sub.
nom., 116 S. Ct. 184 (1995); Franchi Const. Co. v. Combined Ins. Co. of America,
580 F.2d 1, 7 (1st Cir. 1978). The practical basis underlying this guarantee is
that two different juries are precluded from reaching inconsistent results.
McDaniel, 987 F.2d at 305. The guarantee also prevents duplicative evidence,
increased expense, inconvenience, and delay that would inhibit expedition and
economy of the litigation. [*23] See, e.g., Monaghan, 827 F. Supp. at 246;
Welcker v. Smithkline Beckman, 746 F. Supp. 576, 583 (E.D. Pa. 1990); Brown v.
Advantage Eng'g, Inc., 732 F. Supp. 1163, 1171 (N.D. Ga. 1990); In re All Maine
Asbestos Litig., 575 F. Supp. 1375, 1381 (D. Me. 1983). Federal courts have
therefore firmly established that bigurcation is inappropriate when the issues
sought to be tried separately are not distinct and incapable of severance.

   Plaintiffs' proposed severance of the issues of "defect" and "proximate
cause" runs directly afoul of all of these principles. Plaintiffs can posit a
"common issue" in these cases only by defining the issue of "defect" so narrowly
that virtually all of the evidence presented at the first trial would, in
fairness, need to be considered again at each of 10 separate trials. An
affirmative answer to the "general causation" question, as posed by plaintiffs,
would tell the second juries nothing about whether a specific IBM product, as
used by a particular plaintiff, was capable of causing the specific injury
alleged by that plaintiff. n7 To fairly answer that question, the second jury
would necessarily have to weigh all of the same epidemiological [*24] evidence


and medical testimony presented at the "single trial" with a very real
possibility that the second jury would view that evidence differently.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n7 In other words, the "general causation" trial would not even establish
general causation between any particular kind of keyboard use and any specific
medical condition.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Any finding based on expert testimony in the "single trial" would also be
prejudicial to IBM if, as plaintiffs apparently propose, IBM cannot confront
these experts with the inconsistencies between their theoretical testimony and
the specific causation claims of the individual plaintiffs. Plaintiffs' experts
concede that any determination that a plaintiff's "RSI" is caused by IBM
equipment must be made through the process of elimination, based on a detailed
understanding of the plaintiff's medical and work histories. See D'Avanzo Aff.
PP 21-23, Exhs. F, G. H.

Clearly, one of the most effective cross-examination techniques in these
cases is to confront a medical expert with the fallacies [*25] in the expert's
.J                                                                      PAGE
13
                        1996 U.S. Dist. LEXIS 10126, *25

opinion that keyboard use can cause or caused a particular plaintiff's claimed
injury. This both undermines the expert's credibility and points out the
deficiencies in the far less developed and reliable evidence of "RSI" claims or
complaints upon which the experts' "general causation" opinion are premised.
Under plaintiffs' proposal, the jury would hear only that various plaintiffs
claim to have been injured by keyboard use, without any ability of IBM to show
that those claims lack merit and thereby demonstrate the "claims" evidence
upon which plaintiffs rely to establish "general causation" is equally suspect.

Similarly, while plaintiffs would like to make the issue of "defect" turn on
the question of whether "keyboards" cause "RSI," these cases involve a variety
of products manufactured and used over three decades for different purposes. The
New Jersey Supreme Court has emphasized that in applying risk-utility analysis
to determine whether a product is defective, the focus must necessarily be on
the specific product before the court and the danger or risk of injury presented
by that product. Becker v. Baron Bros., 138 N.J. 145, 159, 164, 649 A.2d 613
(1993). A courts [*26] from other jurisdictions have recognized, the meaning of
"injury" must necessarily be defined in reference to the injury involved in the
action. See, e.g., Riley v. Becton Dickinson Vascular Access, Inc., 913 F. Supp.
879, 884 n.3 (E.D. Pa. 1995). Thus, plaintiffs' narrow delineation of the
"defect" issue does not comport with product liability law, any meaningful
evaluation of IBM products and their alleged relationship to particular injuries
necessarily requires a jury to address the issue in the context of individual
issues relating to a specific product and plaintiff.

Even if a jury could properly make a finding of "defect" on the limited
evidence that would be made available at the single trial, this finding would
prove of little help to second juries required to evaluate whether a specific
defect caused a specific plaintiff's injury. These problems are not limited to
the unanswered questions concerning medical causation discussed above, but also
would extend to the issue of "defect causation." For example, in the case of
warning claim, the second jury would need to know precisely what the first jury
believed a warning at the time each of these products was sold n8 should [*27]
have included in order to determine whether adherence to the warning would have
prevented the plaintiff's injury. In the case of a design defect, the second
jury would need to know precisely how the first jury believed a design defect
should have been eliminated by an alternative design to determine whether the
plaintiff's injury would thereby have been prevented. n9 None of these
determinations could properly or effectively be made the first jury in the
evidentiary vacuum plaintiffs propose, n10 and the second juries would

inevitably have to revisit the evidence and issues addressed by the first jury in light of the facts developed as to each plaintiff.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n8 The illusion that the jury would be determining a "common issue" is further undermined by the fact that the "defect" determination in each case would be made as of different points in time and based on different evidence, depending on when a product was sold or a particular plaintiff sustained injury. See, e.g., Oliver v. AT & T Teletype Corp., Civ. No. 93-1806 (D.N.J. May 30, 1995) (GEB) (so-called "state-of-the-art" evidence and "notice" evidence admissible, if at all, only prior to time of injury). [*28]

n9 See Smith v. Keller Ladder, Co., 275 N.J. Super. 280, 284, 645 A.2d 1269 (App. Div. 1994) (analysis as to whether there was a safe and reasonably

PAGE 14

1996 U.S. Dist. LEXIS 10126, *28

feasible alternative that would have eliminated the alleged harm varies according to the product and injury involved in each case).

n10 Indeed, given that even plaintiffs' experts admit that there are no known thresholds for the ergonomic risk factors that they believe cause "RSI," it is not surprising that even these experts have not come forward with a specific warning or alternative design.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Given all of these obvious problems, it is not surprising that a similar bifurcation proposal was resoundingly rejected by the Seventh Circuit in Matter of Rhone-Poulenc Rorer, Inc., 51 F.3d 1293 (7th Cir. 1995) as little more than a means of extortion. In litigation brought by hemophiliacs against manufacturers of blood solids tainted by the AIDS virus during the early 1980s, the court found that a grant of class certification for a trial addressing the issue of negligence, but not proximate cause, had been an abuse of discretion.

The Seventh Circuit [*29] cited plaintiffs' lack of success in 12 of 13 individual trials and the effect that aggregation would inevitably have on the outcome of the litigation as a primary reason for its decision to mandamus the district court:

With all due respect for the district judge's commendable desire to experiment with an innovative procedure for streamlining the adjudication of this "mass tort," we believe that his plan so far exceeds the permissible bounds of discretion in the management of federal litigation as to compel us to intervene and order decertification.

Id. at 1297.

With respect to the trial court's effort to create a common issue by bifurcating the issues of negligence and proximate cause, the court concluded that such a procedure would necessarily involve overlapping issues resolved by different juries. Id. at 1303. n11 The court also noted the unfairness of having a single jury determine the issue of a defendant's negligence in light of the defendant's past successes and the "great likelihood that the plaintiffs' claims, despite their human appeal, lack legal merit." Id. at 1299. The court explained:

One jury, consisting of six persons . . . will hold the [*30] fate of an industry in the palm of its hand. This jury, jury number fourteen, may disagree with twelve of the previous thirteen juries -- and hurt the industry into bankruptcy. That kind of thing can happen in our system of civil justice . . . . But it need not be tolerated when the alternative exists of submitting an issue to multiple juries constituting in the aggregate a much larger and more diverse sample of decision-makers.

Id. at 1300.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n11 Other courts have similarly rejected bifurcation proposals which would involve overlapping evidence. See, e.g., In re "Agent Orange" Products Liability Litig., 565 F. Supp. 1263, 1275 (E.D.N.Y. 1983) (separate trial on government contractor defense inappropriate because trial would involve same evidence that would be needed to determine the issue of liability, and that would be needed to determine the issue of liability, and possibility of prejudice); In re All Maine Asbestos Litig., 575 F. Supp. 1375, 1381 (D. Me. 1983) (bifurcation inappropriate where issues inextricably linked); Payne v. A.O. Smith Corp., 99 F.R.D. 534, 539 (S.D. Ohio 1983) (overlap of evidence precluded bifurcation of issue of proximate cause).

PAGE 15
1996 U.S. Dist. LEXIS 10126, *30

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -
[*31]

In the present matter, plaintiffs cite no authority to support consolidation and bifurcation of what plaintiffs term "liability" from "specific causation." The only cases they cite involve mass disasters, such as airline crashes and motor vehicle accidents, n12 in which courts simply bifurcated the issue of liability (including causation) from the issue of damages. n13 Because the plaintiffs in such cases are injured simultaneously by the same event, and there is no real question as to whether the event caused injury to each plaintiff, the liability issue in those cases is the same for each plaintiff.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n12 In re Air Crash Disaster at Detroit Metropolitan Airport, 737 F. Supp. 391 (E.D. Mich. 1989); Moss v. Associated Transp., Inc., 344 F.2d 23 (6th Cir 1965).

n13 Plaintiffs also reference an antitrust action, wherein the court severed an entire antitrust claim from two others to avoid confusion concerning evidence of relevant markets. Reading Indus., Inc. v. Kennecott Copper Corp., 61 F.R.D. 662, 665 (S.D.N.Y. 1974). This case, of course, provides no support for plaintiffs' position.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -
[*32]

In short, the issues of product defect, general causation, and proximate cause are integrally interwoven in "RSI" litigation, where causation has not been proved and is hotly disputed. The issues cannot fairly or workably be severed, and any effort to do so would both prejudice IBM and violate its Seventh Amendment right to have a single jury review common evidence and determine common issues of fact.

Finally, this Court notes that plaintiffs' "Judicial economy" arguments are unpersuasive. Because the cases involve almost no common issues, the request for consolidation also includes an unprecedented proposed bifurcation of issues which cannot analytically be separated in any fair way. Defining the parameters of the bifurcation, and litigating what evidence properly belongs in the initial or subsequent trials, would alone likely exceed the time and expense associated with the disposal of these cases, including any necessary trials, in the ordinary course.

Because the structure of the so-called single trial contemplated by plaintiffs would prevent IBM from presenting a large part of its defense, a favorable finding for the plaintiffs on the vaguely-defined issue presenting issue [*33] presented to the jury would be enhanced. This finding would likely

lead to 10 lengthly proximate cause/damage trials. These trials would involve

16                                                                    PAGE

1996 U.S. Dist. LEXIS 10126, *33

much of the "general causation" evidence introduced in the "single trial," and
their length might well exceed that of a single trial on all issues, given IBM's
need to counter plaintiffs' tactical advantage from the prior finding of
"defect."

   The plaintiffs' proposal would not advance the resolution of this litigation.
Instead, it would unfairly complicate and unduly prolong the disposition of the
13 cases subject to this motion, the proposal would not otherwise advance the
resolution of this litigation. Any finding in the "single trial" would have no
impact on any of the remaining cases against IBM. Plaintiffs' would not be in a
position to use offensive collateral estoppel, which is inappropriate where "the
judgment relied upon . . . is itself inconsistent with one or more previous
judgments in favor of the defendants." Parklane Hosiery Co. v. Shore, 439 U.S.
322, 330, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979); see also Burlington Northern
R.R. Co. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1232 n.7 (3d Cir. 1995).

   In sum, this Court finds that plaintiffs' motions [*34] for consolidation of
these cases must be denied for the following reasons: (1) plaintiffs have not
met their burden of showing the existence of common factual or legal issues; (2)
plaintiffs' reliance upon asbestos cases other decisions permitting
consolidation in "RSI" litigation is misplaced; (3) bifurcation will necessarily
result in the duplicative presentation of evidence to difference juries as to
issues which are incapable of severance; and (4) plaintiffs' proposal would not
otherwise advance the resolution of this litigation. Accordingly, plaintiffs'
motions for consolidation are denied.

III. CONCLUSION

   For the foregoing reasons, the Court will grant defendant's motion for
summary judgment, and will dismiss the above-captioned action in its entirety.
An appropriate Order is filed herewith.

   GARRETT E. BROWN, JR., U.S.D.J.

   ORDER

   For the reasons set forth in this Court's Memorandum Opinion,

   IT IS this 21st day of June, 1996

   ORDERED that plaintiffs' motions to consolidate be and is hereby DENIED; and
it is further

   ORDERED that this Order applies to the following cases: Bogdan v. IBM, Civ.
No. 94-4538 (AET); Clark v. IBM, Civ. No. 94-5292 (GEB); [*35] Daniels v. IBM,
Civ. No. 95-2527 (AET); Miller v. IBM, Civ. No. 93-4849 (GEB); Parker v. IBM,
Civ. No. 92-4895 (AET); Prezans v. IBM, Civ. No. 95-1827 (MLP); Schneck v. IBM,
92-4370 (GEB), Serranico v. IBM, Civ. No. 94-2275 (MLP); Shaw v. IBM, Civ. No.
93-1801 (AET); Thomas-Ross v. IBM, Civ. No. 94-2487 (AET).

   GARRETT E. BROWN, JR., U.S.D.J.

********* Print Completed *********                              102R2F

Time of Request:   March 14, 2002   09:38 am EST

Print Number:      969:0:49079457
Number of Lines:   759
Number of Pages:   16



**Hotmail**    Home | Inbox | Compose | Address Book | Options  Help

shiraz43@hotmail.com

Save Address(es) | Block                    Previous | Next | Close

**From :** LexisNexis(TM) Print Delivery <lexisnexis@prod.lexisnexis.com>

**To :** ~~████████████~~

**Subject :** LexisNexis(TM) Email Request (969:0:49079187)

**Date :** Thu, 14 Mar 2002 09:32:58 -0500 (EST)

Reply | Reply All | Forward | Delete | Put in Folder... ▾       **Printer Friendly Version**

102R2F

```
Print Request:    LEXSEE

Time of Request: March 14, 2002   09:32 am EST

Number of Lines: 131
Job Number:      969:0:49079187

Client ID/Project Name:

Research Information:

Lexsee 1994 U.S. Dist. LEXIS 10670

Note:


                                                    PAGE
1


                    LEXSEE 1994 U.S. Dist. LEXIS 10670

        FRANK G. SCARDINO and THE PENNSYLVANIA COMPANIES, INC.,
        Plaintiffs, v. AMALGAMATED BANK OF NEW YORK, Defendant.

              CIVIL ACTION No. 93-6740

        UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
                        PENNSYLVANIA

              1994 U.S. Dist. LEXIS 10670

                  August 2, 1994, Filed

COUNSEL:
 [*1]  For FRANK G. SCARDINO, PLAINTIFF: VINCENT B. MANCINI, MEDIA, PA.  G.
ALEXANDER BOCHETTO, GEORGE BOCHETTO, P.C., PHILA., PA. For THE PENNSYLVANIA
COMPANIES, INC., PLAINTIFF: VINCENT B. MANCINI, PA.

For AMALGAMATED BANK OF NEW YORK, DEFENDANT: BARRY E. BRESSLER , PELINO & LENTZ,
PHILA, PA. PATRICK J. DORAN, PELINO & LENTZ, PHILA, PA.
```

JUDGES:
GREEN, S. J.

OPINIONBY:
CLIFFORD SCOTT GREEN, S.J.

OPINION:

MEMORANDUM ORDER

Presently before the Court is Defendant's motion to dismiss Plaintiffs'
complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for
failure to state a claim upon which relief can be granted. Also before the Court
is Plaintiffs' response in opposition thereto, Defendant's reply, and
Plaintiffs' sur-reply. In addition, before the Court is Plaintiffs' motion to
consolidate this action with another action pending before this Court pursuant
to Rule 42. Also before the Court is Defendant's response in opposition thereto
and Plaintiffs' reply. Upon consideration of the foregoing, the Defendants'
motion to dismiss will be granted in part and denied in part for the reasons set
forth below. Plaintiffs' motion to consolidate will be denied.

In this diversity action, Plaintiffs, Frank [*2] Scardino and the
Pennsylvania Companies, Inc., instituted suit against Defendant Amalgamated Bank
of New York (" Amalgamated Bank") based on Defendant's allegedly engaging in
fraudulent and illegal conduct while managing a securities clearance loan
account that Plaintiffs had opened with Defendant Bank. Plaintiffs opened this
account with Defendant Bank in order to facilitate Plaintiffs' trading in
securities. In their first amended complaint, Plaintiffs have sought relief
based on the following nine causes of action: 1) fraud/misrepresentation, 2)
breach of contract, 3) breach of fiduciary duty, 4) violation of Pennsylvania's
Unfair Trade Practices Law, 5) claim for an accounting, 6) indemnification, 7)
rescission of contract, 8) violation of public policy, and 9) unjust enrichment.
Defendant has now moved to dismiss Plaintiffs' first amended complaint in its
                                                                         PAGE
2

1994 U.S. Dist. LEXIS 10670, *2

entirety. Subsequent to the motion to dismiss, Plaintiffs moved to consolidate
this action for all purposes with Amalgamated Bank of N.Y. v. The Pennsylvania
Companies, Inc., Civil Action 93-6703, which is a related mortgage foreclosure
action also pending before this Court.

Discussion

A. Motion to Dismiss

[*3]   1. Governing Standards

As a general rule in reviewing motions to dismiss, such motions cannot be
granted unless it appears beyond doubt that plaintiff can prove no set of facts
in support of plaintiff's claims that would entitle plaintiff to relief. Conley
v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); Labov
v. Lalley, 809 F.2d 220 (3d Cir. 1987). In addition, the court must accept
plaintiff's allegations as true and construe all reasonable inferences therefrom
in plaintiff's favor. Labov, 809 F.2d at 221. This is a diversity case in which
state substantive law governs, and Pennsylvania law applies to the substantive
claims asserted. See, e.g., Mazur v. Merck & Co., Inc., 964 F.2d 1348, 1353 (3d
Cir. 1992).

2. Indemnification Claim

The issue presented is whether Plaintiffs' indemnification claim should be
dismissed. Defendant argues that this claim is premature while Plaintiffs assert
the contrary.

As a general rule under Pennsylvania law, the right of indemnity "'enures to

a person who without [*4] fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another and for which he himself is only secondarily liable.'" F.J. Schindler Equipment Co. v. Raymond Co., 274 Pa. Super. 530, 532, 418 A.2d 533, 534 (1980) (emphasis in original) (quoting Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 370 (1951)). "It is well settled that before any right of indemnification arises, the indemnitee must in fact pay damages to a third party." Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 122 (3d Cir. 1992). Thus, any action for indemnification before such payment is premature. F.J. Schindler, 274 Pa. Super. at 532, 418 A.2d at 534; see Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc., 510 Pa. 1, 507 A.2d 1, 14 (1986) ("An implied contract to indemnify cannot come into existence until the [defendant] has been found liable to plaintiff and has discharged the obligation [*5] which arises out of that liability.").

   In the instant case, Plaintiffs have not alleged that they have paid damages to a third party; nor have they alleged that they have been held liable for damages to a third party. Therefore, Plaintiffs' indemnity claim is clearly premature. Moreover, Plaintiffs' allegations of mere loss of legal fees does not create an indemnity claim. McClure v. Deerland Corp., 401 Pa. Super. 226, 585 A.2d 19, 23 (Pa. Super. 1991); Automatic Time and Control Co. v. IFM Electronics GmBh, 410 Pa.Super. 437, 600 A.2d 220 (1991). Thus, the indemnification claim should be dismissed.

   3. Remaining Claims

                    1994 U.S. Dist. LEXIS 10670, *5

   As to the eight remaining claims, this Court concludes that it is not clear that Plaintiffs can prove no set of facts that would entitle them to relief under Pennsylvania law. Hence, these claims will not be dismissed. n1

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

   n1 On a motion to dismiss as noted above, the court must decide whether plaintiff's allegations, when taken as true, assert a legally cognizable claim. Most of Defendant's arguments in support of dismissal assert that there is no evidence to support the Plaintiffs' claims, and these arguments also point to what are apparently undisputed facts. Such arguments do not provide a basis for dismissal on a motion to dismiss; however, such arguments may be more appropriately considered by this Court on a motion for summary judgment.

- - - - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -
[*6]

   B. Motion to Consolidate

   Under Rule 42(a), consolidation may be ordered when "actions involving a common question of law or fact are pending before the court." Fed.R.Civ.P. 42(a); Kelly v. Greer, 295 F.2d 18, 20 (3d Cir. 1961); Liberty Lincoln Mercury v. Ford Marketing, 149 F.R.D. 65, 80-82 (D.N.J. 1993); see, Atkinson v. Roth, 297 F.2d 570, 575-76 (3d Cir. 1962). "Rule 42(a) . . . confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate causes for trial as may facilitate the administration of justice." Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 339 F.2d 673, 675-76 (3d Cir. 1964), cert. denied, 382 U.S. 812, 86 S. Ct. 23, 15 L. Ed. 2d 60 (1965). Consequently, the court may order such actions consolidated in whole or the court may order a joint hearing or trial of any or all matters in issue in the actions. Fed.R.Civ.P. 42(a).

   Although there are common questions of law or fact in both actions as to the validity of [*7] the note and mortgage, these questions are not sufficiently predominant in this action to warrant consolidation. Moreover, it is unclear as to whether the note and mortgage is related to the securities account. Thus, on

the record as it stands at this time, there is an insufficient connection
between the actions proposed for consolidation, and, therefore, consolidation
will be denied.

ACCORDINGLY, this day of August, 1994, IT IS HEREBY ORDERED that the motion
to dismiss for failure to state a claim is GRANTED only as to Plaintiffs'
indemnification claim and the indemnification claim is hereby DISMISSED without
prejudice.

IT IS FURTHER ORDERED that the motion to dismiss is DENIED as to all other
claims asserted in Plaintiffs' First Amended Complaint. IT IS ALSO ORDERED that
Plaintiffs' motion to consolidate is DENIED.

BY THE COURT

Clifford Scott Green, S.J.

                                                                102R2F

********** Print Completed **********

Time of Request:    March 14, 2002   09:32 am EST

Print Number:       969:0:49079187
Number of Lines:    131
Number of Pages:    3

[ Reply ] [ Reply All ] [ Forward ] [ Delete ] [ Put in Folder... ▾ ]          **Previous** | **Next** | **Close**



MSN Home   |   My MSN   |   Hotmail   |   Web Search   |   Shopping   |   Money   |   People & Chat
© 2002 Microsoft Corporation. All rights reserved. TERMS OF USE   Advertise   TRUSTe Approved Privacy Statement
GetNetWise