ORIGINAL

FILED
HARRISBURG, PA

NOV 22 2002

MARY E. D'ANDREA, CLERK
Per: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY D. ALBRIGHT, et al.<br><br>Plaintiffs<br><br>v.<br><br>DANIEL A. VIRTUE, et al.<br><br>Defendants | Case No. 1:CV-00-878<br>Judge Sylvia H. Rambo |

**DEFENDANT ABF FREIGHT SYSTEM, INC.'S**
**MEMORANDUM OF POINTS AND AUTHORITIES**
<u>**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

Respectfully submitted,

Vincent Candiello
MORGAN, LEWIS &
BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904
(717) 237-4000

Joseph E. Santucci, Jr. (*pro hac vice*)
Robyn B. Weiss (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5398

November 21, 2002

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

I. PROCEDURAL HISTORY ........................................................................ 1

II. STATEMENT OF FACTS ........................................................................... 2

III. STATEMENT OF QUESTIONS INVOLVED ........................................... 2

IV. ARGUMENT ................................................................................................ 3

    A. Introduction ......................................................................................... 3

    B. Standard for Summary Judgment ....................................................... 4

    C. Plaintiffs Fail To Establish Required Elements of a "Hybrid" Breach of Duty of Fair Representation/Breach of Contract Claim ................................................................................... 4

        1. Plaintiffs Fail To Establish That The Union Defendants Breached Their Duty Of Fair Representation ................................................................................ 5

            a. The Union Fairly Represented Plaintiffs At All Stages Of The Grievance Process ................... 7

        2. Plaintiffs Fail To Establish That Defendant ABF Breached The Terms Of The NMFA ............................. 9

            a. ABF Correctly Rejected The Plaintiffs' Grievances As Untimely ...................................... 10

            b. ABF Properly Afforded The Plaintiffs Transfer Rights Under Article 5, Section 5 Of The NMFA Rather Than Rights Under Article 5, Section 2 Of The NMFA ..................... 12

V. CONCLUSION ........................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Air Line Pilots v. ONeill*, 499 U.S. 65 (1991) .................................................. 6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................. 4, 14

*Bazarte v. United Transportation Union*, 429 F.2d 868 (3d Cir. 1980)..... 6, 9

*Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573 (6th Cir. 1994)............. 6

*Celotex Corp. v Catrett*, 477 U.S. 317 (1986)................................................ 4

*DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151
    (1983) ........................................................................................................ 4

*Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171 (7th Cir. 1995) ................ 6

*Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66
    (3d Cir. 1985)........................................................................................... 10

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976) .................... 5, 10

*Humphrey v. Moore*, 375 U.S. 335 (1964) ..................................................... 5

*In re ABF Labor Contract Litigation*, 988 F.Supp. 556 (D. Md. 1997)... 6, 12

*Johnson v. United Steelworkers of America*, 843 F.Supp. 944
    (M.D. Pa. 1994) ....................................................................................... 6, 9

*Lawrence v. National Westminster Bank N.J.*, 98 F.3d 61 (3d Cir. 1996)..... 4

*Schoch v. First Fidelity Bancorporation*, 912 F.2d 654 (3d Cir. 1990)........ 4

*Siskey v. General Teamsters, Chauffeurs, Warehousemen & Helpers,
    Local No. 261*, 419 F.Supp. 48 (W.D. Pa. 1976) ........................................ 8

*Vaca v. Sipes*, 386 U.S. 171 (1967) ................................................................ 6

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY D. ALBRIGHT, et al.<br><br>Plaintiffs<br>v.<br><br>DANIEL A. VIRTUE, et al.<br><br>Defendants | Case No. 1:CV-00-878<br>Judge Sylvia H. Rambo |

**DEFENDANT ABF FREIGHT SYSTEM, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant ABF Freight System, Inc. ("ABF") hereby submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

**I.    PROCEDURAL HISTORY**

On May 16, 2000, Plaintiffs filed a Complaint in this Court, alleging a "hybrid" breach of the duty of fair representation claim against Defendants Daniel A. Virtue ("Virtue"), Local 776, International Brotherhood of Teamsters ("Local 776"), and the International Brotherhood of Teamsters ("IBT") (collectively "the Union"), and a breach of collective bargaining agreement claim against ABF, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185. On August 18, 2000, the Union filed a motion to dismiss, claiming that Plaintiffs'

1

lawsuit was untimely filed. ABF did not file a dispositive motion at that time. On November 13, 2000, the Court granted the Union's motion to dismiss. Plaintiffs filed a motion for reconsideration, which was denied as untimely.

Plaintiffs appealed the Court's granting of the Union's motion to dismiss to the United States Court of Appeals for the Third Circuit. On December 6, 2001, the Third Circuit vacated the district court's order and remanded the case to this Court for further proceedings. The Court issued a scheduling Order on March 6, 2002, and the parties completed discovery on November 14, 2002. Defendant ABF now files this Motion for Summary Judgment on all counts.

## II.   STATEMENT OF FACTS

ABF refers the Court to its Statement of Undisputed Material Facts filed contemporaneously with ABF's Motion for Summary Judgment.[1]

## III.   STATEMENT OF QUESTIONS INVOLVED

This case presents two questions: (1) did the Union breach its duty of fair representation in processing Plaintiffs' grievances regarding their seniority placement at ABF; and (2) did ABF breach the terms of the National Master Freight Agreement ("NMFA") when it: (a) rejected the Plaintiffs' grievances as untimely under Article 43, Section 1(c) of the Central Pennsylvania Over-the-Road

---

[1]   References to ABF's Statement of Undisputed Material Facts are indicated as "Facts ¶__."

2

and Local Cartage Supplemental Agreement; or (b) afforded the Plaintiffs transfer rights under Article 5, Section 5 of the NMFA rather than rights under Article 5, Section 2 of the NMFA.

The undisputed evidence establishes that the Union fairly and effectively represented the Plaintiffs in all grievance proceedings. In addition, ABF, at all material times, acted in accordance with the terms of the NMFA. Accordingly, summary judgment should be entered for all Defendants.

## IV. ARGUMENT

### A. Introduction

In this "hybrid" breach of duty of fair representation/Section 301 lawsuit, Plaintiffs ask the Court to find that their seniority at ABF is governed by Article 5, Section 2 of the NMFA, rather than Article 5, Section 5. In their Complaint, however, Plaintiffs fail to mention that the Eastern Region Joint Area Committee ("ERJAC")—established by the NMFA to address disputes arising under the contract—had denied their seniority grievances as untimely. To overcome the ERJAC's final and binding decision, the Plaintiffs must present evidence to prove that the Union breached its duty of fair representation and that ABF breached the NMFA. Plaintiffs have presented no legal authority or factual basis to support any of their claims against the Union and ABF. Accordingly, summary judgment should be entered for all Defendants.

### B. Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986). A defendant is not required to negate a plaintiff's claim; rather, it only must point out that plaintiff's evidence is insufficient to carry his or her burden of persuasion at trial. Lawrence v. National Westminster Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996). After a defendant meets its initial burden, a plaintiff must present competent evidence designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (citation omitted). Unsupported assertions, conclusory allegations, and mere suspicious beliefs are not sufficient to survive a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). In this case, Plaintiffs fail to present any genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

### C. Plaintiffs Fail To Establish Required Elements of a "Hybrid" Breach of Duty of Fair Representation/Breach of Contract Claim

A "hybrid" duty of fair representation/Section 301 suit involves two independent but intertwined causes of action. DelCostello v. International Bhd. of

4

Teamsters, 462 U.S. 151, 164-65 (1983). To prevail, a plaintiff must prove that: (1) the union breached its duty of fair representation; and (2) the employer breached its collective bargaining agreement. Id. at 165. Furthermore, a plaintiff must show that the union's breach affected the integrity of the grievance/arbitration process. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568 (1976).

Absent the union's breach of the duty of fair representation, an employer is allowed to rely on the finality provision of the grievance and arbitration provisions in the collective bargaining agreement. See Hines, 424 U.S. at 567; Humphrey v. Moore, 375 U.S. 335, 350-51 (1964) (upholding a joint committee decision resolving a seniority dispute where the evidence failed to show a breach by the union of its duty of fair representation). Thus, absent a showing that the Union breached its duty of fair representation, the final and binding decision of the ERJAC denying Plaintiffs' grievances as untimely must stand.

  1. <u>Plaintiffs Fail To Establish That The Union Defendants Breached Their Duty Of Fair Representation</u>

Plaintiffs allege that the Union Defendants, Virtue, Local 776 and the IBT "breached their duty of fair representation by mishandling the ensuing grievance or arbitration proceedings." Complaint ¶27. Specifically, they allege that Local 776 "has failed, at the terminal level and/or through the grievance procedure, to fairly represent Plaintiffs." Id. at ¶28(a). Plaintiffs additionally allege that the IBT, who is responsible for "the creation and oversight of the Local Union . . . failed to

5

insure the fair representation of Plaintiffs." Id. at ¶28(b). Plaintiffs failed to produce any support for these theories, however, and they should be dismissed.

To establish a breach of the duty of fair representation, a plaintiff must show that the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). A union's actions are considered arbitrary only if "in light of the factual and legal landscape" they are "so far outside a wide range of reasonableness as to be irrational." Air Line Pilots v. O'Neill, 499 U.S. 65, 67 (1991); see Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995); Johnson v. United Steelworkers of America, 843 F. Supp 944, 946 (M.D. Pa. 1994). "Mere negligence or poor judgment on the part of the union will not support a claim of unfair representation." Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 584 (6th Cir. 1994)(citation omitted); Bazarte v. United Transportation Union, 429 F.2d 868, 872 (3d Cir. 1980). In sum, a plaintiff alleging a duty of fair representation breach "faces a heavy burden." In re ABF Labor Contract Litigation, 988 F. Supp. 556, 564 (D. Md.) (1997), aff'd per curiam sub nom., Gorge v. Carey, 166 F.3d 1209 (4th Cir. 1998). Absent proof of a breach, the Court need not even examine the breach of contract claim. See Johnson, 843 F. Supp. at 949.

      a.    The Union Fairly Represented Plaintiffs At All Stages Of The Grievance Process.

Contrary to Plaintiffs' assertions, Local 776 fairly represented them at all stages of the grievance process. Plaintiffs filed their grievances in late 1998 and early 1999. Facts ¶22a-p. In that timeframe, ABF and Local 776 held terminal level meetings to hear the seniority grievances. Facts ¶25. During these proceedings, ABF took the position that the grievances were untimely under the contract because the grievants knew their seniority on the date they reported to work at ABF and did not file their grievances within seven days of reporting to work. Id. Local 776 did not agree with ABF's position, but rather argued on behalf of the grievants that the grievances were timely filed. Id. Because ABF and Local 776 could not reach agreement at the terminal level, Local 776 submitted the grievances to the ERJAC for hearing. Id.

At the ERJAC hearings,[2] Virtue submitted a brief and argued on behalf of the Plaintiffs. Facts ¶30-32. Virtue vigorously argued that the Plaintiffs grievances were timely under Article 5, Section 4(d) of the NMFA. Id. With respect to the Runk grievances, Virtue stated:

> It's very clear, it's the [NMFA] language, and Mr. Runk has thirty days from the posting of the seniority list,

---

[2] As described fully in the Facts, the grievances arose in one of two factual contexts. Thus, they were divided into two groups and piloted under two separate grievances, Runk and Nye, and heard separately. Facts ¶28-32.

7

> which he did file. As soon as the seniority list was
> posted, he filed a grievance within thirty days.
>
> Every person sitting in this room that has a grievance
> here did exactly the same thing. They filed a grievance
> within thirty days of the posting of the seniority list.
> Each person sitting in this room also did send a letter so
> they can get a job opportunity and get to work. That's
> what they did. As soon as they got there, when the
> seniority list went up, they filed a timely grievance.

Facts ¶31. With respect to the Nye grievances, Virtue argued:

> [The grievants] contacted the Company with a letter,
> stating they wanted to go on 5.5. At that time, they
> didn't realize what 5.5 was. Then, they took the job
> opportunity, came to Carlisle, PA, and at that time, went
> to work and then each one filed a grievance after the
> seniority list was posted. If you look at my brief, Exhibit
> 1 is Article 5, Section 4(d), Posting Seniority List . . . .
> This is [NMFA] language and each grievant filed a
> grievance timely under the [NMFA] language which says
> they have thirty days from the posting of the seniority
> list. They did that timely and feel the case is timely and
> should be referred back to the parties on the merits.
> Their position is it was all done timely under the
> [NMFA] under Article 5, Section 4(d), Posting Seniority
> List.

Facts ¶32. In addition to Virtue, several of the Plaintiffs (Erdman, Fritz, Ramirez, Sgrignoli, Snyder and Welker) made statements on their own behalf. Facts ¶31, 32.

Plaintiffs apparently ask this Court to find a breach of the Union's duty of fair representation based simply on the fact that the ERJAC ruled in favor of ABF. The fact that the Union did not prevail, however, does not constitute a breach of the duty of fair representation. See Siskey v. General Teamsters, Chauffeurs,

8

Warehousemen & Helpers, Local No. 261, 419 F. Supp. 48, 53 (W.D. Pa. 1976) ("The fact that the defendant unions, after pursuing the plaintiff's claim through the grievance procedure and the arbitration stage, received an unfavorable result from the arbitration committee cannot be construed to mean that the unions breached their duty [of fair representation] to plaintiff.").

Plaintiffs cannot establish that the Union acted irrationally, dishonestly, or discriminatorily. See Bazarte, 429 F.2d at 872 (holding that union did not breach its duty of fair representation where representative argued case at local grievance committee hearing and elected not to pursue the grievance further after determining that plaintiff's case was hopeless); Johnson, 843 F. Supp. at 948 (no DFR violation where plaintiff disagreed with the manner in which the union representative argued his case). Here, Local 776 fairly processed Plaintiffs' grievances through the Company level and the ERJAC level, and the ERJAC issued a final and binding decision denying the grievances as untimely—finding that the Plaintiffs had seven days within which to file their grievances, not thirty days as the Union contended.

  2. Plaintiffs Fail To Establish That Defendant ABF Breached The Terms Of The NMFA.

Plaintiffs' allegation that Defendant ABF failed to observe the provisions the NMFA and the Supplemental Agreement concerning recalls from layoffs and seniority date assignment has no merit. Complaint ¶17. First, as demonstrated

9

above, Plaintiffs cannot establish that the Union Defendants breached their duty of fair representation. Accordingly, the final and binding decision of the ERJAC denying Plaintiffs' grievances as untimely must be upheld and prevents this Court from reaching the substantive merits of their seniority grievances. See Hines, 424 U.S. at 567; Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66 (3d Cir. 1985)(stating that the district court must defer to a joint committee decision unless the union breached its duty of fair representation before the committee).

Second, the evidence clearly demonstrates that ABF did not breach the terms of the NMFA. As an initial matter, ABF correctly rejected the Plaintiffs' grievances as untimely under Article 43, Section 1(c) of the Central Pennsylvania Over-the-Road and Local Cartage Supplemental Agreement. Moreover, if the Court were to examine the merits of the Plaintiffs' grievances, the evidence demonstrates that ABF properly afforded the Plaintiffs transfer rights under Article 5, Section 5 of the NMFA rather than rights under Article 5, Section 2 of the NMFA.

      a.    ABF Correctly Rejected The Plaintiffs' Grievances As Untimely.

Article 43, Section 1(c) of the Central Pennsylvania Over-the-Road and Local Cartage Supplemental Agreement provides that employees have only seven (7) days from the occurrence of an alleged violation to file a grievance. Facts ¶23. The evidence in this case demonstrates that the Plaintiffs understood—more than

seven days before they filed their respective grievances—that they would be placed at the bottom of the seniority board when they went to work for ABF in Carlisle. In October 1995, the Plaintiffs were sent a letter from Local 776 indicating that they had transfer rights under Article 5, Section 5 of the NMFA. Facts ¶16. Article 5, Section 5 clearly states that an employee who accepts a transfer opportunity under this section "shall be placed at the bottom of the seniority board for bidding and layoff purposes." Facts ¶13.

In late 1998 and early 1999, the Plaintiffs sent letters to ABF, as required by Article 5, Section 5, to obtain transfer opportunities. Facts ¶20a-p. Fourteen of the sixteen letters make specific reference to Article 5, Section 5. Id. All of the confirmation letters sent to the sixteen Plaintiffs by ABF indicate that the Plaintiffs would start work in Carlisle "in accordance with Article 5, Section 5." Id. Finally, when the Plaintiffs reported for work at ABF, they were specifically told by Lee Edenbo, Driver Supervisor, that "they would go to the bottom . . . of the seniority list." Facts ¶21. None of the sixteen Plaintiffs filed a grievance regarding their seniority placement under Article 5, Section 5 within seven days of reporting to work at ABF, despite the fact that they knew their seniority placement on their first day of work—if not long before that. Facts ¶24.

Accordingly, ABF properly rejected the Plaintiffs' grievances as untimely under Article 43, Section 1(c) of the Central Pennsylvania Over-the-Road and

Local Cartage Supplemental Agreement. The ERJAC agreed with ABF's position, and the Plaintiffs have set forth no basis to challenge that finding, or to find that ABF breached the NMFA or its Supplemental Agreement.

> b.  ABF Properly Afforded The Plaintiffs Transfer Rights Under Article 5, Section 5 Of The NMFA Rather Than Rights Under Article 5, Section 2 Of The NMFA.

The September 19, 1995 Change of Operations Committee decision relating to the ABF/Carolina merger determined that Article 5, Section 2 dovetailing rights only applied to "the seniority lists at domiciles and terminals <u>affected by this change of operations</u>."[3] Facts ¶11. The Committee further stated that "every facility <u>whose work has been merged</u> with the work of another facility must be grouped with that facility." <u>Id.</u> At the time ABF acquired Carolina in September 1995, Carolina did not have a terminal in Carlisle, Pennsylvania. Facts ¶12. Because Carolina's Carlisle facility did not exist at the time of ABF's acquisition of Carolina, the Plaintiffs who took a layoff from Carlisle in May 1995 were not grouped with any ABF terminal. <u>Id.</u> In addition, the employees who transferred

---

[3]  In a merger, there are two customary ways to determine the seniority of the employees of the merged companies. First, the employees of the merging companies can be "dovetailed"—meaning that each employee would have a seniority date based on their date of hire, without regard to the company which had previously been the employer. In the alternative, the employees of the company being merged can be "endtailed"—that is, placed on the end of the seniority list below the employees of the surviving company. <u>See</u> <u>In re ABF</u>, 988 F. Supp. at 560.

from Carlisle prior to the shutdown were not grouped with ABF's Carlisle facility. Thus, none of the Plaintiffs had dovetailing rights at ABF's Carlisle facility under Article 5, Section 2.

The Change of Operations Committee decision, however, did note that the laid-off (inactive) Carolina employees and the employees laid-off as a result of the acquisition had rights under Article 5, Section 5 of the NMFA. Facts ¶13. In fact, the decision provided these employees with expanded transfer opportunities for the life of the 1994-1998 NMFA. Facts ¶14.

ABF had an extremely limited need for additional over-the-road drivers from the time of the merger in September 1995 through the expiration of the 1994-1998 NMFA. Facts ¶17. None of the sixteen Plaintiffs were offered transfer opportunities during this timeframe. Id. When ABF needed additional drivers in late 1998 and early 1999, ABF filled its openings in accordance with Article 5, Section 5, as required by the 1998-2003 NMFA. Facts ¶18-20.

In fact, all sixteen Plaintiffs submitted Article 5, Section 5 transfer requests in late 1998 and early 1999, and all sixteen Plaintiffs were offered available transfer opportunities. Facts ¶20a-p. All of the Plaintiffs accepted transfers to ABF's facility in Carlisle and were placed at the bottom of the board for seniority and bidding purposes, but retained their Carolina seniority dates for all fringe benefits. Id. Plaintiffs received exactly what they were entitled to under the

NMFA.

Plaintiffs' argument that they should have recall rights under Article 5, Section 2 because ABF merged with Carolina completely ignores the fact that Carolina did not have a Carlisle facility at the time of the merger. The Change of Operations Committee found that Article 5, Section 2 rights applied only to merged terminals, and, as an exhibit to the Committee's decision clearly indicates, Carolina had no employees at Carlisle at the time of the merger. Facts ¶12.

Plaintiffs' right to work at ABF's facility in Carlisle was governed solely by Article 5, Section 5 of the NMFA.[4] Plaintiffs have not and cannot present any facts to prove that ABF breached any obligation to them. Given the fact that ABF did not acquire Carolina's closed Carlisle terminal, the Plaintiffs only had the right to transfer to ABF's Carlisle terminal pursuant to Article 5, Section 5. The mere fact that Plaintiffs disagree with their placement on the ABF seniority board is not sufficient to establish a breach of contract claim. See Liberty Lobby, Inc., 477 at 250-52. Other than disagreeing with the decision, Plaintiffs have provided no basis for finding that ABF breached the NMFA. Nor can they. Accordingly, Plaintiffs' breach of contract claim fails.

---

[4] For the Plaintiffs who transferred from Carolina's Carlisle facility to other Carolina facilities prior to the merger to claim rights other than those set forth in Article 5, Section 5 is absurd, if not frivolous.

14

## V. CONCLUSION

For the foregoing reasons, Defendant ABF respectfully requests that this Court grant ABF's Motion for Summary Judgment and dismiss Plaintiffs' claims in their entirety, with prejudice.

Respectfully submitted,

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904
(717) 237-4000

Joseph E. Santucci, Jr. (*pro hac vice*)
Robyn B. Weiss (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5398

Attorneys for Defendant
ABF Freight System, Inc.

Dated: November 21, 2002