ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFERY D. ALBRIGHT, NORMAN T. :
BOIRE, GARY M. DEITZ, WILLIAM H. :
ERDMAN, MICHAEL W. FRITZ, :
A. RONALD FROMBAUGH, RALPH A. :
HARRIS, ALLEN W. LANDIS, LOWELL :
McGUIRE, WALTER R. MINICH, :
RAYMOND C. NEVINS, STANLEY L. :
NYE, VINCENT RAMIREZ, JR., :
KEITH E. SGRIGNOLI, RAY G. :
SYNDER, JR., and LAWRENCE :          No. 1:CV-00-0878
WELKER, :
:
                  Plaintiffs, :
:
vs. :
:
DANIEL VIRTUE, Business Agent of the :
International Brotherhood of Teamsters; :
INTERNATIONAL BROTHERHOOD OF :
TEAMSTERS; LOCAL 776, :
INTERNATIONAL BROTHERHOOD OF :
TEAMSTERS; and ABF FREIGHT :
SYSTEM, INCORPORATED, :
:
                  Defendants. :

FILED
HARRISBURG, PA
NOV 22 2002
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

Judge Rambo

## STATEMENT OF MATERIAL FACTS

1. Each of the Plaintiffs to this action was a truck driver employed by Carolina Freight and each was, at the time they filed their grievances raised in Plaintiffs' Amended Complaint, a member of Teamsters Local Union No. 776. *See* Exhibit 1.

2. On May 21, 1995, Carolina Freight closed its Carlisle facility, but remained in operation at other Carolina Freight facilities. *See* Virtue Affidavit at ¶ 2.

3. ABF's parent company subsequently purchased Carolina Freight and on September 25, 1995, merged its operations with other companies owned by the parent company. *See* Virtue Affidavit at ¶ 3.

4. In accordance with paragraph seven (7) of the ABF Multi-Region Change of Operations decision, Plaintiffs were offered an opportunity to transfer to permanent employment with ABF; the Union notified Plaintiffs of such by letter dated October 12, 1995. *See* Exhibit 2 and 3.

5. Under Article 5, Section 5 of the National Master Freight Agreement (hereinafter NMFA), former Carolina Freight employees, who were on a letter of layoff, could seek employment at ABF by notifying ABF, in writing, of their interest in a transfer opportunity. *See* Exhibit 4, Virtue Affidavit ¶ 6.

6. After the above-captioned Plaintiffs had worked at ABF's Carlisle facility for sometime, said Plaintiffs filed grievances grieving their seniority status. *See* Virtue Affidavit at ¶ 8.

7. Grievances falling under Article 1 through 39 of the NMFA follow the following grievance procedure: Traditionally, the Union Representative or Steward meets with the Employer in an attempt to resolve the grievance. If the Employer and the Union Representative or Steward, fail to resolve the matter, the grievance is submitted to the Eastern Region Joint Area Committee (hereinafter ERJAC). The ERJAC will hear the grievance and either decide the matter or refer such grievances to the Change of Operations Committee. If the ERJAC decides the matter, said decision is final and binding. *See* Exhibit 5, Virtue's Affidavit at ¶ 10.

8. In the processing of Plaintiffs' grievances, Business Agent Virtue wrote letters to Plaintiffs, who requested notification of the status of their grievances, and informed said Plaintiffs of the date and time of the hearings that were to be held with regard to Plaintiffs' grievances. *See* Virtue Affidavit at ¶¶ 9, 11.

9. In response to these grievances, the Company raised a Point of Order before the ERJAC, alleging that the employees failed to file their grievances within

the required seven (7) days, as per Article 43, Section 1(c) of the contract. *See* Exhibit 5 and 6.

10. The Union responded to the Company's Point of Order, as follows: "[p]rotest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made, the dates and positions posted shall be deemed correct," as per Article 5, Section 4(d) of the contract. *See* Exhibit 4 and 7, Virtue Affidavit at ¶ 12.

11. In a decision dated April 27, 1999, the ERJAC sustained the Company's Point of Order and ruled that Plaintiffs' grievances were untimely. *See* Exhibit 8.

12. Plaintiff Jeffrey D. Albright was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

13. On December 4, 1998, Plaintiff Albright notified ABF in writing that he was interested in being recalled to work at the ABF Carlisle facility, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 9.

14. On December 14, 1998, Plaintiff Albright began to work at ABF's Carlisle facility. *See* Exhibit 10.

15. Plaintiff Albright filed a grievance grieving his seniority status. *See* Exhibit 11.

16. Plaintiff Norman T. Boire was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

17. On December 9, 1998, Plaintiff Boire notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 12.

18. On January 8, 1999, Plaintiff Boire began to work at ABF's Carlisle facility. *See* Exhibit 10.

19. Plaintiff Boire filed a grievance on March 17, 1999 grieving his seniority status. *See* Exhibit 13.

20. Plaintiff Gary M. Dietz was employed by Carolina Freight and was laid off from that employment at the Allentown, Pennsylvania facility on September 25, 1995. *See* Exhibit 1.

21. On November 16, 1998, Plaintiff Dietz notified ABF in writing that he was interested in being recalled to work at the ABF Carlisle facility, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 14.

22. On November 20, 1998, Plaintiff Dietz began to work at ABF's Carlisle facility. *See* Exhibit 10.

23. Plaintiff Dietz filed a grievance on December 31, 1998 grieving his seniority status. *See* Exhibit 15.

24. Plaintiff William H. Erdman was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

25. On December 15, 1998, Plaintiff Erdman notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 16.

26. On February 11, 1999, Plaintiff Erdman began to work at ABF's Carlisle facility. *See* Exhibit 10.

27. Plaintiff Erdman filed a grievance on March 11, 1999 grieving his seniority status. *See* Exhibit 17.

28. Plaintiff Michael W. Fritz was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

29. On November 4, 1998, Plaintiff Fritz notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 18.

30. On November 21, 1998, Plaintiff Fritz began to work at ABF's Carlisle facility. *See* Exhibit 10.

31. Plaintiff Fritz filed a grievance on December 20, 1998 grieving his seniority status. *See* Exhibit 19.

32. Plaintiff A. Ronald Frombaugh was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

33. On November 3, 1998, Plaintiff Frombaugh notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 20.

34. On November 12, 1998, Plaintiff Frombaugh began to work at ABF's Carlisle facility. *See* Exhibit 10.

35. There is no evidence in the record that Plaintiff Frombaugh filed a grievance alleging a violation of his seniority status.

36. Plaintiff Ralph A. Harris was employed by Carolina Freight and was laid off from that employment at the Baltimore, Maryland facility on September 25, 1995. *See* Exhibit 1.

37. Plaintiff Harris notified ABF that he was interested in working at an ABF facility on November 16, 1998. *See* Exhibit 1 and 21.

38. On December 7, 1998, Plaintiff Harris began to work at ABF's Carlisle facility. *See* Exhibit 10.

39. Plaintiff Harris filed a grievance on December 27, 1998 grieving his seniority status. *See* Exhibit 22.

40. Plaintiff Allen W. Landis was employed by Carolina Freight and was laid off from that employment at the Baltimore, Maryland facility on September 25, 1995. *See* Exhibit 1.

41. On December 3, 1998, Plaintiff Landis notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section of the NMFA. *See* Exhibit 1 and 23.

42. On January 15, 1999, Plaintiff Landis began to work at ABF's Carlisle facility. *See* Exhibit 10.

43. Plaintiff Landis filed a grievance on March 4, 1999 grieving his seniority status. *See* Exhibit 24.

44. Plaintiff Lowell C. McGuire was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

45. On January 8, 1999, Plaintiff McGuire notified ABF in writing that he was interested in being recalled to work at the ABF Carlisle facility, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 25.

46. On February 11, 1999, Plaintiff McGuire began to work at ABF's Carlisle facility. *See* Exhibit 10.

47. Plaintiff McGuire filed a grievance on March 18, 1999 grieving his seniority status. *See* Exhibit 26.

48. Plaintiff Walter R. Minnich was employed by Carolina Freight and was laid off from that employment at the Baltimore, Maryland facility on September 25, 1995. *See* Exhibit 1.

49. On November 30, 1998, Plaintiff Minnich notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 27.

50. On December 13 1998, Plaintiff Minnich began to work at ABF's Carlisle facility. *See* Exhibit 10.

51. Plaintiff Minnich filed a grievance on December 30, 1998 grieving his seniority status. *See* Exhibit 28.

52. Plaintiff Raymond C. Nevins was employed by Carolina Freight and was laid off from that employment at the Baltimore, Maryland facility on September 25, 1995. *See* Exhibit 1.

53. On January 11, 1999, Plaintiff Nevins notified ABF in writing that he was interested in being recalled to work at the ABF Carlisle facility, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 29.

54. On February 10, 1999, Plaintiff Nevins began to work at ABF's Carlisle facility. *See* Exhibit 10.

55. Plaintiff Nevins filed a grievance on March 28, 1999 grieving his seniority status. *See* Exhibit 30.

56. Plaintiff Stanley L. Nye was employed by Carolina Freight and was laid off from that employment at the Baltimore, Maryland facility on September 25, 1995. *See* Exhibit 1.

57. On February 22, 1999, Plaintiff Nye notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 31.

58. On February 27, 1999, Plaintiff Nye began to work at ABF's Carlisle facility. *See* Exhibit 10.

59. Plaintiff Nye filed a grievance on March 9, 1999 grieving his seniority status. *See* Exhibit 32.

60. Plaintiff Vincent Ramirez, Jr. was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

61. On November 4, 1998, Plaintiff Ramirez notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5. *See* Exhibit 1 and 33.

62. On November 27, 1998, Plaintiff Ramirez began to work at ABF's Carlisle facility. *See* Exhibit 10.

63. Plaintiff Ramirez filed a grievance on December 20, 1998 grieving his seniority status. *See* Exhibit 34.

64. Plaintiff Keith Sgrignoli was employed by Carolina Freight and was laid off from that employment at the Allentown, Pennsylvania facility on September 25, 1995. *See* Exhibit 1.

65. On November 18, 1998, Plaintiff Sgrignoli notified ABF in writing that he was interested in being recalled to work at the ABF Carlisle facility, as per Article 5 of the NMFA. *See* Exhibit 1 and 35.

66. On December 5, 1998, Plaintiff Sgrignoli began to work at ABF's Carlisle facility. *See* Exhibit 10.

67. Plaintiff Sgrignoli filed a grievance on December 17, 1998 grieving his seniority status. *See* Exhibit 36.

68. Plaintiff Ray G. Snyder, Jr. was employed by Carolina Freight and was laid off from that employment at the Carlisle, Pennsylvania facility on May 23, 1995. *See* Exhibit 1.

69. On November 3, 1998, Plaintiff Snyder notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 37.

70. On November 27, 1998, Plaintiff Snyder began to work at ABF's Carlisle facility. *See* Exhibit 10.

71. Plaintiff Snyder filed a grievance on December 17, 1998 grieving his seniority status. *See* Exhibit 38.

72. Plaintiff Lawrence D. Welker was employed by Carolina Freight and was laid off from that employment at the Baltimore, Maryland facility on September 25, 1995. *See* Exhibit 1.

73. On October 30, 1998, Plaintiff Welker notified ABF in writing that he was interested in being recalled to work at ABF, as per Article 5, Section 5 of the NMFA. *See* Exhibit 1 and 39.

74. On November 27, 1998, Plaintiff Welker began to work at ABF's Carlisle facility. *See* Exhibit 10.

75. Plaintiff Welker filed a grievance on December 16, 1998 grieving his seniority status. *See* Exhibit 40.

76. Plaintiff Albright's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

77. On April 17, 2000, Daniel Virtue notified Plaintiff Albright that Mr. Albright's grievance was denied. *See* Exhibit 41.

78. Plaintiff Boire's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

79. On May 11, 1999, Daniel Virtue notified Plaintiff Boire that Mr. Boire's grievance was denied. *See* Exhibit 42.

80. Plaintiff Dietz's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

81. On May 11, 1999, Daniel Virtue notified Plaintiff Dietz that Mr. Dietz's grievance was denied. *See* Exhibit 43.

82. Plaintiff Erdman's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

83. On May 11, 1999, Daniel Virtue notified Plaintiff Erdman that Mr. Erdman's grievance was denied.

84. Plaintiff Fritz's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

85. On May 11, 1999, Daniel Virtue notified Plaintiff Fritz that Mr. Fritz's grievance was denied. *See* Exhibit 44.

86. Plaintiff Harris's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

87. On May 11, 1999, Daniel Virtue notified Plaintiff Harris that Mr. Harris's grievance was denied. *See* Exhibit 45.

88. Plaintiff Landis's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

89. On May 11, 1999, Daniel Virtue notified Plaintiff Landis that Mr. Landis' grievance was denied. *See* Exhibit 46.

90. Plaintiff McGuire's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

91. On May 11, 1999, Daniel Virtue notified Plaintiff McGuire that Mr. McGuire's grievance was denied. *See* Exhibit 47.

92. Plaintiff Minnich's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

93. On May 11, 1999, Daniel Virtue notified Plaintiff Minnich that Mr. Minnich's grievance was denied. *See* Exhibit 48.

94. Plaintiff Nevins's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

95. On May 11, 1999, Daniel Virtue notified Plaintiff Nevins that Mr. Nevins's grievance was denied. *See* Exhibit 49.

96. Plaintiff Nye's grievance was used as the pilot grievance for the group of grievances that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

97. On May 11, 1999, Daniel Virtue notified Plaintiff Nye that Mr. Nye's grievance was denied. *See* Exhibit 50.

98. Plaintiff Ramirez's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

99. On May 11, 1999, Daniel Virtue notified Plaintiff Ramirez that Mr. Ramirez's grievance was denied. *See* Exhibit 51.

100. Plaintiff Sgrignoli's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

101. On May 11, 1999, Daniel Virtue notified Plaintiff Sgrignoli that his grievance was denied.

102. Plaintiff Snyder's grievance was part of the Runk pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

103. On May 11, 1999, Daniel Virtue notified Plaintiff Snyder that Mr. Snyder's grievance was denied. *See* Exhibit 52.

104. Plaintiff Welker's grievance was part of the Nye pilot grievance group that the Union processed to the ERJAC, which grievance the ERJAC denied. *See* Exhibit 8.

105. On May 11, 1999, Daniel Virtue notified Plaintiff Welker that Mr. Welker's grievance was denied. *See* Exhibit 53.

106. Article 1, Section 2 of the NMFA provides in relevant part: "The Union consists of any Local Union which may become a party to this Agreement and any Supplemental Agreement as hereinafter set forth." Defendants, Daniel Virtue and the International Brotherhood of Teamsters, are not

parties to the National Master Freight Agreement and, therefore, Daniel Virtue and the International Brotherhood of Teamsters are not proper parties to this action. *See* Exhibit 54, Virtue Affidavit at ¶ 5.

107. Mr. Virtue advocated Plaintiffs' position at the ERJAC hearings, as is evidenced by the transcripts from said hearings. *See* Exhibit 55.

108. In response to several letters of Plaintiffs requesting appeal from the ERJAC, Mr. Virtue also forwarded said letters to the International Brotherhood of Teamsters requesting review. The appeal letters were forwarded as per Article 8, Section 2 of the contract. *See* Exhibits 56 and 57, Virtue Affidavit ¶ 15.

Respectfully Submitted,

**IRA H. WEINSTOCK, P.C.**
800 North Second Street
Harrisburg, PA 17102
Phone: 717-238-1657

By: _____
JASON M. WEINSTOCK
Attorney I.D. No. 69272

By: _____
MAGGIE COLWELL
Attorney I.D. No. 88632

## CERTIFICATE OF SERVICE

I, Jason M. Weinstock, Esquire, hereby certify that upon the date stated below, I served the attached **STATEMENT OF UNDISPUTED MATERIAL FACTS** upon the persons named below, at the stated addresses, by first class postage paid United States mail.

Robert S. Mirin, Esquire
**AHMAD & MIRIN**
8150 Derry Street, Suite A
Harrisburg, PA 17111

James A. McCall, Esquire
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C. 20001

Robyn B. Weiss, Esquire
**MORGAN, LEWIS & BOCKIUS, L.L.P.**
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Dated: 11/22/02

_____
JASON M. WEINSTOCK