**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFERY D. ALBRIGHT, NORMAN T.       :
BOIRE, GARY M. DEITZ, WILLIAM H.      :
ERDMAN, MICHAEL W. FRITZ,             :
A. RONALD FROMBAUGH, RALPH A.         :
HARRIS, ALLEN W. LANDIS, LOWELL       :
McGUIRE, WALTER R. MINICH,            :
RAYMOND C. NEVINS, STANLEY L.         :
NYE, VINCENT RAMIREZ, JR.,            :
KEITH E. SGRIGNOLI, RAY G.            :
SYNDER, JR., and LAWRENCE             :
WELKER,                               :

                   Plaintiffs,   :

           vs.                              :

DANIEL VIRTUE, Business Agent of the  :
International Brotherhood of Teamsters; :
INTERNATIONAL BROTHERHOOD OF          :
TEAMSTERS; LOCAL 776,                 :
INTERNATIONAL BROTHERHOOD OF          :
TEAMSTERS; and ABF FREIGHT            :
SYSTEM, INCORPORATED,                 :

              Defendants. :

FILED
HARRISBURG, PA

NOV 2 2 2002

MARY E. D'ANDREA, CLERK
Per _____
           Deputy Clerk

No. 1:CV-00-0878

Judge Rambo

## AFFIDAVIT OF DANIEL A. VIRTUE

COMMONWEALTH OF PENNSYLVANIA    :

                                              :    ss

COUNTY OF DAUPHIN    :

Before me, the undersigned authority, personally appeared Daniel A. Virtue, who, being first duly sworn by me according to law, did depose and state as follows:

1.    I am, and have been, at all times relevant to the issues raised in Plaintiffs' Complaint, a Business Agent for Teamsters Local Union No. 776.

2.    On or about May 21, 1995, Carolina Freight closed its Carlisle facility, but remained in operation at other Carolina Freight facilities.

3.    ABF's parent company subsequently purchased Carolina Freight and on September 25, 1995, merged its operations with other companies owned by the parent company.

4.    Each of the Plaintiffs to this action was, at the time they filed the grievances raised in Plaintiffs' Amended Complaint, a member of Teamsters Local Union No. 776.

5.    The International Brotherhood of Teamsters (hereinafter IBT) and Daniel Virtue are not parties to the NMFA. Article 1, Section 2 of the NMFA provides, in relevant part: "The Union consists of any Local Union which may become a party to this Agreement and any Supplemental Agreement as hereinafter

set forth."   A true and accurate copy of Article 1, Section 2 of the NMFA is attached hereto as Exhibit "A."

6.      On October 12, 1995, Business Agent Charles Shughart wrote a letter to former Carolina Freight employees, advising said employees as follows: "As a result of the decision from the Change of Operations Committee, the Carolina employees who are laid off at Carlisle, PA will have certain rights to future work opportunities at ABF.  Article 5, Section 5 of the NMFA addresses those rights. Those work opportunities will be offered to laid off Carolina employees in seniority order.  However, it is necessary that you notify ABF in writing of your desire to be offered available work."  A true and accurate copy of Business Agent Shughart's October 12, 1995 letter and Article 5, Section 5 of the NMFA are attached hereto as Exhibits "B" and "C."

7.      Under the National Master Freight Agreement, the Change of Operation's Committee met, heard all affected individual's positions, and ultimately made a decision, which decisions were circulated on or about September 19, 1995.  The decisions set forth how all employment issues involving Carolina Freight employees were to be handled.  True and accurate copies of the decisions are attached hereto as Exhibit "D."

8.    The above-captioned Plaintiffs filed grievances grieving their seniority status after returning to work for ABF in 1998 and 1999. The Union processed each grievance.

9.    The Union notified each Plaintiff, who requested to be notified on their grievance form, of the date and time of the grievance hearing to be held with regard to their grievance.

10.    Grievances falling under Article 1 through 39 of the NMFA follow the following grievance procedure:   Traditionally, the Union Representative or Steward meets with the Employer in an attempt to resolve the grievance.  If the Employer and the Union Representative or Steward, fail to resolve the matter, the grievance is submitted to the Eastern Region Joint Area Committee (hereinafter ERJAC).  The decision of the Eastern Region Joint Area Committee is final and binding.

11.    I notified the Plaintiffs of the date and time that Plaintiffs' grievances were scheduled to be heard by the ERJAC.  During the grievance process, ABF raised a point of order requesting that each of the Plaintiffs' grievances be denied based on a timeliness issue.  This issue was the sole issue scheduled to be heard before the ERJAC.

12.    In preparation for the ERJAC hearing, I drafted a brief that was presented to the ERJAC, which brief stated in relevant part:

4

> Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made, the dates and positions posted shall be deemed correct. Any such protest which is timely made may be submitted to the grievances procedure. Therefore, based on the facts presented, the Union respectfully requests that the Company's Point of Order be denied.

A true and accurate copy of the said brief is attached hereto as Exhibit "E."

13.     Plaintiffs' cases were heard before the ERJAC on April 27, 1999. True and accurate copies of the transcripts of these proceedings are attached hereto as Exhibit "F." As each transcript evidences, I argued that Plaintiffs' grievances were timely. Plaintiffs were also provided an opportunity to state their position at the ERJAC hearing.

14.     On May 11, 1999, I notified Plaintiffs that the ERJAC had denied the grievances in that said grievances were deemed untimely by the ERJAC.

15.     In reply to Plaintiffs' request to appeal the ERJAC decision, I forwarded said request by letter to the IBT. A true and accurate copy of said letter is attached hereto as Exhibit "G."

16.     Each of the averments contained in this Affidavit are based upon my direct personal knowledge of the events in question.

County Of Maricopa
State Of Arizona    ss.

DANIEL VIRTUE

SWORN and Subscribed to
and before me this 21st
day of November 2002.

Notary Public

OFFICIAL SEAL
K.K. DONALD
NOTARY PUBLIC-ARIZONA
MARICOPA COUNTY
My Comm. Expires May 16, 2004

6

# ARTICLE 1.
# PARTIES TO THE AGREEMENT

## Section 1.  Employers Covered

The Employer consists of Associations, members of Associations who have given authorization to the Associations to represent them in the negotiation and/or execution of this Agreement and Supplemental Agreements, and individual Employers who become signator to this Agreement and Supplemental Agreements as hereinafter set forth.  The signator Associations enter into this Agreement and Supplemental Agreements as hereinafter set forth.  The signator Associations represent that they are duly authorized to enter into this Agreement and Supplemental Agreements on behalf of their members under and as limited by their authorizations as submitted prior to negotiations.

## Section 2.  Unions Covered

The Union consists of any Local Union which may become a party to this Agreement and any Supplemental Agreement as hereinafter set forth.  Such Local Unions are hereinafter designated as "Local Union."  In addition to such Local Unions, the Teamsters National Freight Industry Negotiating Committee representing Local Unions affiliated with the International Brotherhood of Teamsters, hereinafter referred to as the "National Union Committee," is also a party to this Agreement and the agreements supplemental hereto.

## Section 3.  Transfer of Company Title or Interest

The Employer's obligations under this Agreement including Supplements shall be binding upon its successors, administrators, executors and assigns.  The Employer agrees that the obligations of this Agreement shall be included in the agreement of sale, transfer or assignment of the business.  In the event an entire active or inactive operation, or a portion thereof, or rights only, are sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation or use of rights shall continue to be subject to the terms and conditions of this Agreement for the life thereof.  Transactions covered by t    EXHIBIT
"A"

provision include stock sales or exchanges, mergers, consolidations, spin-offs or any other method by which a business is transferred.

It is understood by this Section that the signator Employer shall not sell, lease or transfer such run or runs or rights to a third party to evade this Agreement. In the event the Employer fails to require the purchaser, transferee, or lessee to assume the obligations of this Agreement, as set forth above, the Employer (including partners thereof) shall be liable to the Local Union(s) and to the employees covered for all damages sustained as a result of such failure to require the assumption of the terms of this Agreement until its expiration date, but shall not be liable after the purchaser, the transferee or lessee has agreed to assume the obligations of this Agreement. The obligations set forth above shall not apply in the event of the sale, lease or transfer of a portion of the rights comprising less than all of the signator Employer's rights to a nonsignator company unless the purpose is to evade this Agreement. Corporate reorganizations by a signatory Employer, occurring during the term of this Agreement, shall not relieve the signatory Employer or the re-organized Employer of the obligations of this Agreement during its term.

When a signator to this Agreement purchases rights from another signator, the provisions of Article 5 shall apply. The applicable lay-off provisions of this Agreement shall apply.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, or other entity involved in the sale, merger, consolidation, acquisition, transfer, spin-off, lease or other transaction by which the operation covered by this Agreement or any part thereof, including rights only, may be transferred. Such notice shall be in writing, with a copy to the Local Union, at the time the seller, transferor or lessor makes the purchase and sale negotiation known to the public or executes a contract or transaction as herein described, whichever first occurs. The Local Union shall also be advised of the exact nature of the transaction, not including financial details.

The term rights shall include routes and runs.

OMAS VINSON
ICE PRESIDENT

REW C. DEILEY
ECORDING SECRETARY

ELVIN HARRIS
USTEE

RRY L. KING
USTEE

ANETTE WATERS
USTEE

**Local Union No. 776**

AFFILIATED WITH THE

International Brotherhood of Teamsters
2552 JEFFERSON STREET
HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH
PRESIDENT AND BUSINESS AGENT

DALE H. CRUM
SECRETARY TREASURER AND BUSINESS AGENT

BUSINESS AGENTS

JOHN L. FOGLE
CARLOS N. RAMOS, II
CHARLES SHUGHART
GEORGE F. SMART, SR.
RUSSELL A. STEPP
DANIEL A. VIRTUE

October 12, 1995

Dear Carolina Employee:

This letter is important. Please take the time to read it.

Surely you're aware that ABF and Carolina Freight recently merged their operations. Because of that merger, a change of operations was held on September 14/15, 1995.

As a result of the decision from the change of operations committee, the Carolina employees who are laid off at Carlisle, Pa will have certain rights to future work opportunities with ABF. Article 5, Section 5 of the NMFA addresses those rights. Those work opportunities will be offered to laid off Carolina employees in seniority order. However, it is necessary that you notify ABF in writing of your desire to be offered available work.

Enclosed is a form letter and an envelope. If you desire to be offered available work, you must complete the letter and mail it to ABF **as soon as possible.** If you desire, you may also draft your own letter instead of using the form letter. It is your choice to send the letter via regular mail or certified mail.   In either case, I suggest that you keep a copy of the letter as your file copy.

You should mail the letter to ABF today. On October 16, 1995, the Com~~~ will begin compiling the list of employees who desire available work.

If you have any questions, please feel welcome to contact us.

Sincerely,

Charles Shughart
Business Agent

EXHIBIT
"B"

## Article 5, Section 4

### Posting Seniority List

(d) The Employer shall give the Local Union a seniority list at least every six (6) months. The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal. Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made, the dates and positions posted shall be deemed correct. Any such protest which is timely made may be submitted to the grievance procedure.

### Section 5. Work Opportunity

Over-the-road employees, who are on letter of layoff, shall be given an opportunity to transfer to permanent over-the-road employment (prior to the employment of new hires) occurring at other over-the-road domiciles of the Employer located within the Regional area provided they notify the Employer in writing of their interest in a transfer opportunity. The offer of transfer will be made in the order of continuous over-the-road seniority of the laid-off drivers domiciled within the Regional area. The Employer shall be required to make additional offers of transfer to an employee who has previously rejected a transfer opportunity provided the employee again notifies the Employer in writing of his/her continued interest in additional transfer opportunities. However, the Employer will only be required to make one transfer offer in any six (6) calendar month period. Any employee accepting such offer shall be paid at the employee's applicable rate of pay and shall be placed at the bottom of the seniority board for bidding and layoff purposes, but shall retain company seniority for fringe benefits only. A transferring employee shall pay his/her own moving expenses and shall, upon reporting to such new domicile, be deemed to have relinquished his/her right to return with seniority to the domicile from which he/she transferred. The provisions of this Section shall not supersede an established order of call/hiring in the Supplemental Agreement.

EXHIBIT "C"

$\alpha$ 776

# Eastern Region Joint Area Committee

Established in accordance with the terms and conditions of the National Master Freight Agreement and the ___C PA___ Supplemental Agreement, entered into by and between the Local Union and carriers engaged in City Pickup and Delivery and/or Over-the-Road Freight Operations.

Docket No. __R-38-99__

IN THE MATTER OF THE DISPUTE BETWEEN

Teamsters Local(s) No. ___776___

___Harrisburg, PA___
City                                    State

and

___ABF Freight System, Inc.___
Name of Employer

RECEIVED
MAY 10

Submission

1

We, the undersigned, parties to the National Master Freight Agreement and the ___C PA___ Supplemental Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Region Joint Area Committee, by virtue of its authority, as set forth in Article __43__ and ___ of the ___C PA___ Supplemental Agreement, the following:

> On behalf of Stan Nye (Pilot #89012), Union alleges violation of Article 5, Section 5, timeliness issue.

The undersigned further agree that a majority decision of the Eastern Region Joint Area Committee in the above dispute will be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article __43__ of the ___C PA___ Supplemental Agreement.

Date ___April 27, 1999___

Employer ___ABF Freight System, Inc.___          Local Union(s) ___776___
Steven J. Frolas                                   Daniel A. Virtue

Signed by ___Dir., Ind. Rels.___                  Signed by ___Bus. Agent___

Title _____                                  Title _____

## DECISION

> The Panel, in executive session, motion made, seconded and carried that since the grievants knew their seniority positions on the day they reported, the Company's point of order is upheld. Cost to Union.

___R. L. Schaeffer___                              ___Nicholas Picarello___
Employer Co-Secretary                              Union Co-Secretary
___April 27, 1999___                               ___April 27, 1999___
(Date)                                             (Date)

EXHIBIT
"D"

AUG. -05' 02(MON) 09:04    AN. LEWIS 14         TEL:140         P. 002

# Eastern Region Joint Area Committee

Established in accordance with the terms and conditions of the National Master Freight Agreement and the ___C PA___
Supplemental Agreement, entered into by and between the Local Union and carriers engaged in City Pickup and Delivery
and/or Over-the-Road Freight Operations.

⟨12⟩

Docket No. __R-39-99__

ABF # 042-031-AP-99

IN THE MATTER OF THE DISPUTE BETWEEN

Teamsters Local(s) No. __776__

__Harrisburg, PA__
City                    State

and

__ABF Freight System, Inc.__
Name of Employer

**Submission**

We, the undersigned, parties to the National Master Freight Agreement and the _____ C PA _____ Supplemental
Agreement, hereby agree to submit the dispute to arbitration under the Rules of Procedure prescribed by the Eastern Region
Joint Area Committee, by virtue of its authority, as set forth in Article __43__ and ___ of the __C PA__
Supplemental Agreement, the following:

> On behalf of Norman Runk (Pilot #89002), Union alleges violation
> of Article 5, timeliness issue.

The undersigned further agree that a majority decision of the Eastern Region Joint Area Committee in the above dispute will
be final, conclusive and binding with no appeal and, further, that neither party will attempt through any overt acts, to void the
decision rendered.

The undersigned also agree that failure to comply with the decision of a majority of the Committee within ten (10) days of the
date of the decision will result in the loss of all contract rights, privileges and benefits due them under Article __43__
of the __C PA__ Supplemental Agreement.

Date __April 27, 1999__

Employer __ABF Freight System, Inc.__      Local Union(s) __776__
Signed by __Steven J. Froias__             Signed by __Daniel A. Virtue__
Title __Dir., Ind. Rels.__                 Title __Bus. Agent__

### DECISION

> The Panel, in executive session, motion made, seconded and carried that since the
> grievants knew their seniority positions on the day they reported, the Company's
> point of order is upheld. Cost to Union.

__R. L. Schaeffer__                        __Nicholas Picarello__
Employer Co-Secretary                      Union Co-Secretary
__April 27, 1999__                         __April 27, 1999__
(Date)

TEAMSTERS LOCAL 776                    Case No. R-38-99

    -vs-                                Grv. No. 89012
                                        Stan Nye

ABF FREIGHT SYSTEMS
                            Pilot case for grievance nos. 85060, 89096,
                            57610, 89076, 90680, 89098 and 89837


                            On the Point of Order



        Exhibit 1 is Article 5, Section 4,d posting seniority list, that I will go over with
the Panel.

            The Employer shall give the Local Union a seniority list at
            least every six (6) months.  The Employer shall also post
            a seniority list at least once every six (6) months and shall
            maintain a current seniority roster at the terminal.  **Protest
            of any employee's seniority date or position on such list
            must be made in writing to the Employer within thirty
            (30) days after such seniority date or position first
            appears, and if no protests are timely made, the dates
            and positions posted shall be deemed correct.**  Any such
            protest which is timely made may be submitted to the
            grievance procedure.  (Emphasis added)


        Therefore, based on the facts presented, the Union respectfully requests that the
Company's Point of Order be denied.

                                    Respectfully submitted,

                                    Daniel A. Virtue
                                    Business Agent


EXHIBIT
"E"

TEAMSTERS LOCAL 776                    Case No. R-39-99

   -vs-                                      Grv. No. 89002
                                       Norman Runk
ABF FREIGHT SYSTEMS

                                 Pilot case for 90651,90657,90652,85053,
                                 89077, 89095, 89093, 88917,89009,89835

### On the Point of Order

Exhibit 1 is Article 5, Section 4,d posting seniority list that I will go over with the Panel.

> The Employer shall give the Local Union a seniority list at least every six (6) months.  The Employer shall also post a seniority list at least once every six (6) months and shall maintain a current seniority roster at the terminal.  **Protest of any employee's seniority date or position on such list must be made in writing to the Employer within thirty (30) days after such seniority date or position first appears, and if no protests are timely made, the dates and positions posted shall be deemed correct.**  Any such protest which is timely made may be submitted to the grievance procedure.  (Emphasis added)

Therefore, based on the facts presented, the Union respectfully requests that the Company's Point of Order be denied.

                                     Respectfully submitted,

                                     Daniel A. Virtue
                                     Business Agent

## EASTERN REGION JOINT AREA COMMITTEE
### Embassy Suites
### Myrtle Beach, South Carolina
### Tuesday, April 27, 1999

## COMMITTEE  B

**R-38-99**     <u>**Local 776 v. ABF Freight System, Inc.**</u>
On behalf of Stan Nye (Pilot #89012), Union alleges violation of Article 5, Section 5, timeliness issue.

**UNION PANEL:**            Ron Jenkins
                            Herman Volpe
                            Keith Noll

**EMPLOYER PANEL:**         Dan Schmidt, Chairman
                            Dan Wachhaus
                            Don Rucker

<u>Dan Schmidt, Chairman</u>:  Danny, identify your parties and . . . .

<u>Steve Froias, ABF Freight</u>:  Mr. Chairman, the Company has a point of order.

<u>Schmidt</u>:  OK.  Steve, identify your parties and tell us about your point of order.

<u>Froias</u>:  Froias for the Company and to my right, Dave Quidort.

<u>Dan Virtue, Local 776</u>:  Excuse me, to put it on the record, we're here to hear the point of order and the point of order, alone, and the Company and the Union agreed that we're here just on the point of order.

<u>Schmidt</u>:  OK.  That's fine, regardless of what we do here?

<u>Virtue</u>:  That's correct.

<u>Schmidt</u>:  OK.

<u>Froias</u>:  Froias for the Company.  The Union is claiming a violation of Article 5, Section 5 of the National Master Freight Agreement.  Specifically, that the seniority date of February 27, 1999 is incorrect.  The grievant requested transfer opportunity under Article 5, Section 5 on February 22, 1999.  He was offered and accepted transfer on February 22, 1999.  He reported and worked his first day on February 27, 1999.

The grievance was given to the Company on March 9, 1999.  Central PA and Over-the-Road and Local Cartage Supplemental Agreement, Article 43, Section 1©, reads in part: "Employees initiating grievances shall set forth their claim, in writing, to the Employer

EXHIBIT
"F"

with a duplicate copy to the steward and/or the Union Representative within seven (7) calendar days after he/she returns to his/her home terminal or seven (7) calendar days from the occurrence of the matter."

Also attached to my brief, I handed out, is a letter dated February 22nd, to Connie Vaughan, from Stanley Nye, Re: Road Driver Laid Off from ABF:   Request for consideration the right to transfer to any ABF, pursuant to the provisions of the decision in Case No. MR-CO-38-9/95:  I, Stanley Nye, road driver, laid off from ABF in Baltimore, MD, hereby notify you in writing of my desire to transfer and invoke my right to transfer under Article 5, Section 5 of the National Master Freight Agreement, as extended in the above-captioned case.

Also attached to that, dated February 25th, certified mail #Z093697089, Mr. Stanley Nye: "Dear Mr. Nye:  In accordance with Article 5, Section 5 of the NMFA, on February 22, 1999, you were contacted and offered opportunity to transfer to permanent employment in your classification at Erie, PA, Carlisle, PA or Winston-Salem, NC.  This letter is to confirm that you elected to accept the job offer at Carlisle, PA.  Please contact the line driver supervisor at that location to determine your reporting date if you have not done so.  Very truly yours, Gordon Ringberg."

We respectfully submit this grievance is untimely and improper before the Committee. I'll hold for summation and rebuttal, Mr. Chairman.

Schmidt:  Union, identify the parties and present your case.

Virtue:  Dan Virtue, give your names for the record.  The names given are Larry Walker, Keith Sgrignoli, Ron Hicks.

First, gentlemen, before I go into the point of order, these two gentlemen, the other gentleman, the grievances are in this packet, contacted the Company with a letter, stating they wanted to go on to 5.5.  At that time, they didn't realize what 5.5 was.  Then, they took the job opportunity, came to Carlisle, PA, and at that time, went to work and then each one filed a grievance after the seniority list was posted at the Carlisle terminal.  If you look at my brief, Exhibit 1 is Article 5, Section 4(d), Posting Seniority List which I'll go over with the Panel.  This is National language and each grievant filed a grievance timely under the National language which says they have thirty days from the posting of the seniority list.  They did that timely and feel the case is timely and should be referred back to the parties on its merits.  Their position is it was all done timely under the National Master Freight Agreement under Article 5, Section 4(b), Posting Seniority List.

We'll hold for rebuttal.

Schmidt:  Company, rebut.

<u>Froias</u>:  Mr. Chairman, all these employees requested transfer opportunity under Article 5, Section 5.  I'll read a portion of that into the record:  "Any employee accepting such offer shall be employed as a new hire and shall be placed at the bottom of the seniority board for bidding and layoff purposes and shall retain Company seniority for fringe benefits only."

They were aware of it when they requested Article 5, Section 5.  They were aware of it when they accepted transfer under Article 5, Section 5, and they were aware of it when they reported to work under Article 5, Section 5.  You have the facts.

<u>Schmidt</u>:  Union, sum up and rebut.

<u>Virtue</u>:  Like I said, their position is they weren't aware of it under 5.5, they did send a letter in to get the job opportunity, they waited for the posting of the seniority list.  Under the National Master Freight Agreement, at that time, they filed a grievance in a timely manner.

<u>Larry Walker</u>:  I called down in Ft. Smith, AR, and she told me what I needed to do was fax down everything, my name and everything, to renew employment under Article 5, Section 5 of the Master Layoff List, which I was on, according to the contract, which I did, and she called me back and told me that I was to call Gary Drake or Lee Edenbo to set up an appointment to go in and see them and I did exactly what I was told and that after I found out, I did everything they told me to do, and then I filed a grievance on it, because I didn't know the seniority was up.  I was laid off through ABF.

<u>Schmidt</u>:  Any other rebuttal from the Union?

<u>Sgrignoli</u>:  I agree with him, except, I agree with Larry, we were contacted that there was job opportunities.  We sent all the information down to Ft. Smith as they requested.  They called us and offered us two positions to move back and we picked what we wanted and we moved back in.  I waited until the seniority list was posted, like he said the Master Freight Agreement, and I filed my grievance because I found out then that whoever was hired before me or with me that we were not in the right slot.

<u>Schmidt</u>:  Is that your rebuttal?  Questions.

<u>Ron Jenkins</u>:  Has anybody got a seniority list with them?

<u>Froias</u>:  I don't.

<u>Schmidt</u>:  Any other questions?  Hearing none, Executive Session.

**DECISION:**  The Panel, in executive session, motion made, seconded and carried that since the grievants knew their seniority positions on the day they reported, the Company's point of order is upheld.  Cost Union.

3

**EASTERN REGION JOINT AREA COMMITTEE**
**Embassy Suites**
**Myrtle Beach, South Carolina**
**Tuesday, April 27, 1999**

RECEIVED
MAR 2 6 2002

**COMMITTEE B**

R-39-99    <u>**Local 776 v. ABF Freight System, Inc.**</u>
On behalf of Norman Runk (Pilot #89002), Union alleges violation of Article 5, timeliness issue.

**UNION PANEL:**      Ron Jenkins
                      Herman Volpe
                      Keith Noll

**EMPLOYER PANEL:**   Dan Schmidt, Chairman
                      Dan Wachhaus
                      Don Rucker

<u>Dan Schmidt, Chairman</u>:  Company point of order.  Identify your parties and present your case.

<u>Dan Virtue, Local 776</u>:   Again, Mr. Chairman, we're here on a point of order and the point of order only.

<u>Schmidt</u>:  State your name for the record.

<u>Virtue</u>:  Dan Virtue, Business Agent.  The Company and Union agree that we're here on the point of order only.

<u>Steve Froias, ABF Freight</u>:  Froias for the Company, that's correct.

<u>Schmidt</u>:  So noted.

<u>Froias</u>:  To my right, Dave Quidort.  The Union is claiming a violation of Article 5, Section 2 of the NMFA.  Specifically, that the grievant's seniority date of December 11, 1998 is incorrect.

The grievant requested transfer opportunity under Article 5, Section 5 on November 30, 1998. He was offered and accepted transfer on December 3, 1998.  He reported and worked his first day on December 11, 1998.  The grievance was given to the Company on December 26, 1998.

The Central PA Over-the-Road and Local Cartage Supplemental Agreement, Article 43, Section 1© reads in part:  "Employees initiating grievances shall set forth their claim, in writing, to the Employer with a duplicate copy to the steward and/or Union

Representative within seven calendar days after he/she returns to his/her home terminal or seven calendar days from the occurrence of the matter."

Attached to my brief, is a copy of a letter from the grievant to ABF Freight System: "Gentlemen: Please consider me for rehire for road driver in Carlisle, PA under Article 5, Section 5 of the Master Freight Agreement. Very truly yours, Norman Runk."

The next exhibit, dated December 9th, certified mail #P433236208, Mr. Norman Runk. "Dear Mr. Runk: In accordance with Article 5, Section 5 of the National Master Freight Agreement, on December 3, 1998, you were contacted and offered an opportunity to transfer to permanent employment in your classification at Erie, PA, Carlisle, PA or Winston-Salem, NC. This letter is to confirm that you elected to accept the job offer at Carlisle, PA. Please contact the line driver supervisor at that location to determine your reporting date if you have not done so. Very truly yours, Gordon Ringberg."

The next exhibit is a copy of the grievance. It was given to the Company and initialed on December 26th. I believe you can read that even though it's highlighted.

Next I have a copy of the language I read to you from Article 43, Section 1©. Also attached is a transcript of the tape of the job offer to transfer to Mr. Runk. I'd like to read it into the record:

Ringberg: Yes, sir, I'm trying to get ahold of Norman Runk, please
Runk: Yes, that is who you are talking to.
Ringberg: It is? Norman, my name is Gordon Ringberg.
Runk: Oh.
Ringberg: I'm with ABF Freight System.
Runk: How are you doing?
Ringberg: I'm doing good. How are you doing?
Runk: OK.
Ringberg: You sent a letter into the Company requesting work opportunity under Article 5, Section 5 of the contract.
Runk: Yes.
Ringberg: I'm making a call to you to make that offer right now but before I do, I need to ask you a couple of questions, if I can, please.
Runk: OK.
Ringberg: Your current status, are you driving for somebody, drawing your pension, or what are you doing?
Runk: I'm driving.
Ringberg: Who are you driving for?
Runk: Consolidated Freight.
Ringberg: Consolidated Freightways?
Runk: Yes.
Ringberg: And what is your seniority date with them?
Runk: Gosh, 96, I have to think a minute. March, I think March of, March 16 of 96, I believe.

2

Ringberg:  Three of 96 is good enough.

Runk:  Yeah, don't hold me to that exact date.

Ringberg:  Well, 1996 is the key in this issue.  OK, with that in mind, I need to, here is your job opportunities.  We have Carlisle, Erie and Winston-Salem.

Runk:  Carlisle, please.

Ringberg:  You want to go to Carlisle?

Runk:  Yes.

Ringberg:  Are you going to accept Carlisle?

Runk:  Yes.

Ringberg:  I'm writing, just a minute.  OK, do you have a pencil?

Runk:  Yes.

Ringberg:  You need to call Gary Drake or Lee Edenbo.

Runk:  OK.  I know both of them.

Ringberg:  And that phone number is 717/245-0384 and they will set up with you to get your physical updated, orientation, and all of that to get you on the road.  They are waiting on you.

Runk:  OK.

Ringberg:  They are ready for you to truck.

Runk:  OK, and that is starting at 100% with Company seniority?

Ringberg:  No, you don't have Company seniority.  You keep your Company seniority for fringe benefits, meaning vacation.

Runk:  Vacation, yes.

Ringberg:  But you go on the bottom of the seniority list at full rate of pay.

Runk:  Yes.

Ringberg:  At the rate, golly, you have a seniority date of what, 1901, no, 1984.  And so you will be at the full rate of pay, but you will be at the bottom of the list.

Runk:  OK, I understand that.

Ringberg:  And there is, I think they are being placed on there as soon as they get there, so I think it would be advantageous to you to get there as soon as you can.

Runk:  OK.

Ringberg:  All right?

Runk:  I appreciate it.

Ringberg:  OK.  Good luck to you.

Runk:  Thank you.

Ringberg:  Thank you.  Goodbye, now.

Runk:  Goodbye.


Back to the brief.  We respectfully submit this grievance is untimely and improper before the Committee.  I'll hold for summation and rebuttal, Mr. Chairman.


Schmidt:  Union, identify your parties and present your case.


Virtue:  Dan Virtue for the Local Union.  (Norm Runk and various names introduced.)  Again, Mr. Chairman, Mr. Runk, when he sent that letter in, he sent the letter to get accepted, to go to work.  When he did finally get to work, he started work, again, if you look at my brief, under Exhibit 1, Article 5, Section 4(d), Posting Seniority List, I will go



over it with the Panel. It's very clear, it's the National language, and Mr. Runk has thirty days from the posting of the seniority list, which he did file. As soon as the seniority list was posted, he filed a grievance within thirty days.

Every person sitting in this room that has a grievance here did exactly the same thing. They filed a grievance within thirty days of the posting of the seniority list. Each person sitting in this room also did send a letter so they can get a job opportunity and get to work. That's what they did. As soon as they got there, when the seniority list went up, they filed a grievance timely.

Do any of you guys have something you want to say.

<u>William Erdman</u>: You stated that we were offered transfers, right?

<u>Virtue</u>: No, his statement was letters were sent . . . .

<u>Erdman</u>: He stated that we were offered transfers to Carlisle, Erie or Winston-Salem.

<u>Virtue</u>: I guess in this letter he's talking . . . .

<u>Erdman</u>: Correct. I mean Carlisle.

<u>Jenkins</u>: In the tape that he read off with Runk, it said he was offered Carlisle, Erie or Winston-Salem, NC. That's where . . . .



<u>Erdman</u>: Transferred to. We never transferred anywhere, we were staying in Carlisle (not clear).

<u>Ray Snyder</u>: I don't know where he got all the conversations here, but I know I was not offered a conversation like that. I'd like to hear a tape with me on it. All is, I was called and offered Carlisle or Erie, and I took the Carlisle, he says to get ahold of Gary Drake or Lee. I mean, you're saying he said it was Article 5. We weren't aware of all this stuff you're saying in this letter. I was not told all that. Maybe Norm was. I can't say what Norm was told and what you have on the paper there. But I know I wasn't told all this.

As far as the seniority number, up until April of this year, I did not have a seniority number. All my slips had on it, it says extra. That's all I have to say.

<u>Virtue</u>: The point of the matter is that the whole case is this. Whether they have it on transcript, whether they don't, whether someone sends a letter, the contract's pretty clear on the thirty days of filing a grievance. The seniority list was posted, they all filed timely under the contract. Everyone of them filed timely, as far as Article 5, Section 4(d), Posting of Seniority List.

4

**Schmidt**:  Is that your case, Union?  Anything else you guys want to add?  Company, sum up and rebut.

**Froias**:  The grievants requested transfer under Article 5, Section 5, they accepted transfer under Article 5, Section 5, and they reported under Article 5, Section 5.  I have copies of the letters we received from each of the grievants requesting transfer opportunity under Article 5, Section 5.  I have copies of the certified letters that they were all sent after they accepted transfer under Article 5, Section 5.  I'll leave them with the Committee for your perusal.

You have the facts, Mr. Chairman.

**Schmidt**:  Union, sum up and rebut.

**Virtue**:  You have the case.  Basically, it's our position that each one of these persons filed a grievance timely.  Under the contract they filed a grievance within thirty days per the National Master Freight Agreement and it was timely filed.

I think as far as the letters, I don't think that's an issue in the case.  I think the issue is was the grievance filed timely or not, and it was filed timely.  That's all I have.

**Jenkins**:  I think the gentleman over there has something to say.  State your name.  If you all got something to say, you can do that.

**Schmidt**:  State your name for the record.

**Michael Fritz**:  I just wanted to say we did not transfer, we did not transfer, we stayed in Carlisle.  Thank you.

**Jenkins**:  Is there anything anybody else would like to say on the record?

**Vinnie Ramirez**:  Yeah.  We did file the grievances timely.  We did exactly according to the Master Freight.  For thirty days of posting, we filed a grievance.  And we're right.  We're not untimely.  Another thing, Article 5, Section 5 shouldn't even be discussed in this matter.  We're discussing an untimely matter.

**Jenkins**:  Anybody else?  Gentlemen, if you got something to say, you can say it.

**Charley Albright**:  Just to mirror what Vinny said, that we are just here to hear a timely issue and that I think we all did file our grievances in a timely manner.

**Volpe**:  What was your first name, Mr. Albright?

**Albright**:  Charles.

<u>Schmidt</u>: Questions from the Panel. Hearing none, Executive Session.

**DECISION:**  The Panel, in executive session, motion made, seconded and carried that since the grievances knew their seniority positions on the day they reported, the Company's point of order is upheld.  Cost Union.

PHIL FERRANTE
VICE PRESIDENT
BRAD LINDSAY
RECORDING SECRETARY
BILL DUNHAM
TRUSTEE
MIKE HORD
TRUSTEE
THOMAS VINSON
TRUSTEE

BUSINESS AGENTS

CARLOS N. RAMOS, II
CHARLES SHUGHART
ROBERT J. SNYDER, JR
RUSSELL A. STEPP
DANIEL A. VIRTUE

# CHAUFFEURS, TEAMSTERS AND HELPERS
## LOCAL UNION NO. 776

"AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS"

2552 JEFFERSON STREET, HARRISBURG, PA 17110-2505

THOMAS B. GRIFFITH                    JOHN L. FOGLE, II
PRESIDENT AND BUSINESS AGENT    SECRETARY TREASURER AND BUSINESS AGENT

May 20, 1999

Phil Young, Freight Director
International Brotherhood of Teamsters
25 Louisiana Ave., N.W.
Washington, DC 20001

Dear Phil:

We have received several letters of appeal on the Eastern Region decisions rendered in Case #R-38-99 and Case #R-39-99.

We are forwarding these appeal letter to you per Article 8, Section 2, as a request to have the decisions reviewed.

If you need any additional information, please do not hesitate to contact me.

Fraternally,

Daniel A. Virtue
Business Agent

DAV/bs
Enclosures
cc:    Norman Boire, Certified Mail No. Z 318 810 428
       Gary Dietz, Sr., Certified Mail No. Z 318 810 429
       Michael Fritz, Certified Mail No. Z 318 810 430
       Allen Landis, Certified Mail No. Z 318 810 431
       Vincent Ramirez, Jr., Certified Mail No. Z 318 810 432
       Norman Runk, Certified Mail No. Z 318 810 433
       Keith Sgrignoli, Certified Mail No. Z 318 810 434
       Ray Snyder, Certified Mail No. Z 318 810 435
       Charles Albright, Certified Mail No. Z 318 810 436

EXHIBIT
"G"

## CERTIFICATE OF SERVICE

I, Ira H. Weinstock, Esquire, hereby certify that upon the date stated below, I

served the attached **AFFIDAVIT OF DANIEL VIRTUE** upon the persons named

below, at the stated addresses, by first class postage paid United States mail.


Robert S. Mirin, Esquire
**AHMAD & MIRIN**
8150 Derry Street, Suite A
Harrisburg, PA 17111

James A. McCall, Esquire
International Brotherhood of Teamsters
25 Louisiana Avenue, N.W.
Washington, D.C. 20001

Robyn Weiss, Esquire
**MORGAN, LEWIS & BOCKIUS, L.L.P.**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004


Date: 11/22/02

By: *Jason M. Weinstock*
JASON M. WEINSTOCK