QtoOt

12/23/

# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JEFFREY D. ALBRIGHT, NORMAN T. BOIRE, GARY M. DIETZ, WILLIAM H. ERDMAN, MICHAEL W. FRITZ, A. RONALD FROMBAUGH, RALPH A. HARRIS, ALLEN W. LANDIS, LOWELL MCGUIRE, WALTER R. MINICH, RAYMOND C. NEVINS, STANLEY L. NYE, VINCENT RAMIREZ, JR., KEITH E. SCRIGNOLI, RAY G. SNYDER, JR., and LAWRENCE D. WELKER,<br>        Plaintiffs<br>    v.<br>DANIEL A. VIRTUE, Business Agent of the International Brotherhood of Teamsters; INTERNATIONAL BROTHERHOOD OF TEAMSTERS; LOCAL 776, INTERNATIONAL BROTHERHOOD OF TEAMSTERS; ABF FREIGHT SYSTEM, INCORPORATED,<br>        Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

FILED
HARRISBURG, PA

DEC 2 0 2002

MARY E. D'ANDREA, CLERK
Per _____
                Deputy Clerk

Case No. 1:CV-00-878
Judge Sylvia H. Rambo

## PLAINTIFF'S RESPONSE TO DEFENDANDANT ABF FREIGHT SYSTEM, INC'S STATEMENT OF UNDISPUTED MATERIAL FACTS

        Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1,

Plaintiffs' herewith submit their response to Defendant, ABF Freight System, Inc.'s

("ABF") Statement of "Undisputed Material Fact." in opposition to Defendant, ABF's

Motion for Summary Judgment avers as follows:

        Plaintiffs' hereby incorporate by reference the introductory material set forth at

the inception of its response to Defendant, Unions' Statement of Material Facts.  And in

further specific response to Defendant, ABF's averments replies as follows:

1.      Admitted

2.      Admitted

3.      Admitted.

4.      It is admitted, however, the National Motor Freight Agreement in force and effect at the time of the 1995 layoffs and the acquisition by ABF as a successor to Carolina Freight through Arkansas Best Corporation through its acquisition of Roadway Corp., the parent company of Carolina Freight Carriers, Corp., is a different collective bargaining agreement than the one presently in forced effective April 1, 1998 to present time.

5.      Admitted

6.      Admitted.

7.      Admitted.

8.      It is admitted, however, Plaintiffs believe that the acquisition process of Carolina by ABF and the ensuing merger were in process prior to the closure of the Carlisle Carolina Freight facility and that the formal announcement in July of 1995 was a ministerial act reflecting the circumstances, which obtained at the time of the Carlisle Carolina Freight facility's closure.

9.      It is admitted that Article 8 of the National Motor Freight Agreement in force up

to March 31, 1998 and Article 8 of the agreement in force from April 1, 1998 to March

31, 2003, set forth the National Grievance Procedure under the Master Agreement (See

Plaintiffs Ex.2, pgs 32-59) and the current labor agreement, which was/is in force April 1,

1998 through March 31, 2003 (Plaintiffs Ex 4, pgs 35-39), sets forth the current National

Grievance Procedure. (See Plaintiffs. exhibits 1 & 2)  Those, for example, in the current

agreement Article 8, Section 6,at the subdivision pertaining to layoffs, clearly gives "laid

off" employees the first opportunity for "...(1st) opportunity for available regular

employment..." Article 8, Section 6, at page 51 (See Plaintiffs Exhibit 2).

        It is further noted that the provisions of Article 8, Section 6, in the Agreement in

effect up to March 31, 1998, deals with partial closings of terminals and transfers of

work.   It provides inter alia at page 46

        "...In addition, the inactive seniority rosters (employees who are on a matter of
layoff) [as were all of the Plaintiffs] at the terminals in which the employees are re-
domiciled, shall be "dovetailed" into the master "Laid Off" Seniority Roster and such
employees shall have the same opportunities to transfer to terminal(s) within the area of
the Supplemental Agreement..."

        It is Plaintiffs position that given the complexity of the Article and Plaintiffs

understanding of their rights, at the time they took a layoff, that the expost facto

reinstatement under Article 5, Section 5 was not explained to them at the time of their lay

off or at the time of the merger or at any time up to the point where Plaintiffs, suas ponte,

sought recall from layoff.

        It is also significant to note that under the Change of Operation Committee

language and the labor agreement, that the jurisdiction of the Change of Operations

Committee is limited to a twelve (12) month period following the opening of the new

terminal and jurisdiction over the closing of the terminal in regard to seniority, while neither circumstance applies to the facts here; the provisions of Article 5, Section 5 where applied to Plaintiffs in designation of Article 5, Section 1's more general protection against seniority loss.  Thus, it appears that the jurisdiction of the relevant Change of Operation Committee as convened under the 1994 to 1998 Agreement, which expired under that provision, within that agreement.  Also, under the provision of the Grievance Article 8 apply to the throughout the life of the contract and only until (if necessary) up to the point when a successor agreement becomes effective (See Article 8, Section 4, page 39 of 1994-1998 Agreement (Exhibit 1)  Similar jurisdictional language appears at Article 8, Section 6 of the current Agreement (Article 8, Section 6, page 45).  Similarly, controlling seniority provisions in both agreements are set forth in Article 5 of the respective agreements mentioned above (1994-1998 Agreement at pages 19-25 (Plaintiffs Exhibit 1 & 3) and pages 21-26 of the current labor agreement (Plaintiffs Exhibit 4) Assuming, arguendo, that the Change of Operation's document somehow modified or effected Plaintiffs rights, any change was not communicated to Plaintiffs who were already in layoff status.

10.     Admitted, however, the averments set forth at ABF's Undisputed Fact #10 are directed to the general right of recall.  It is submitted, it is not disputed by Undisputed Fact #10 or either Defendant that the right of recall existed under Article 5 of the National Motor Freight Agreement.

11.    Admitted, but by way of further observation Plaintiffs agree that they were no lay

off seniority lists as required in the Master Agreement and the Change of Operations

document.  It appears from Defendant's averment that Plaintiffs position has support in

the change of operation in that the language cited by Defendant ABF at Undisputed Fact

#11, which references the "dovetailing" of seniority lists "…affected by this change of

operation…"


12.    It is admitted, but with further clarification that at the time of the acquisition by

ABF, Plaintiffs contend that they had protected layoff status per the existing National

Motor Freight Agreement, Article 5, Section 1(b).  Thus the closure of the terminal of

May of 1995 did not alter their seniority rights under the provisions of Article 5

governing seniority generally which includes language at Section 1 Seniority Rights (b)

seniority shall be broken only by discharge, voluntary quit, retirement, or more than five

(5) – year layoff.  That language continues unchanged in the current collective National

Master Freight Agreement.  (See Plaintiffs Exhibits 1 & 3)  Furthermore, in fact, the

seniority lists made available to Plaintiffs in discovery (See Exhibit 5 & 6) covering the

ABF facility disclose that shortly before the official date of the merger ABF placed 31

employees on its board in Carlisle. (See Exhibit      , June 6, 2002 seniority list).  As to

Defendant's "undisputed" averment #12, Plaintiffs contend that they were in layoff status

from the ABF Carlisle terminal by virtue of the fact that they all laid-off employees

protected by Article 5 (1)(b) at the time of the merger and thereafter.

13.    Denied.  It is noted that nowhere in "undisputed Fact" #13 that there is there

specific reference to the Change of Operation decision or language as actually generated

in 1995.  In any event, Plaintiffs contend that in as much as any decision which changed

their rights as laid off employees who became laid off ABF employees as a result of the

merger, and they were not advised in any way, shape, or form of the ostensible change in

seniority rights that the employer failed to properly follow and administer the contract

and the unions' acquesance breached their duty of fair representation.  Furthermore, the

cited portions of the redacted September 14 Change of Operation provisions at Defendant

(ABF's exhibit #4) reflect the fact that the parties were aware at the time of the closure of

the Carlisle terminal of the merger talks through which ABF absorbed Carolina which

were "…well under way…" (See Defendant ABF's redacted September 14, 1995

transcript at Exhibit 4 incorporating pages 644 through 647 of the Change of Operation

proceedings - more particularly, the remarks at pages 644 to 645 of the change of

operation document)  The unchallenged remarks of Business Agent Schugart, at that

time, reflect the fact that the laid off employees had recall rights for five (5) years and

nothing in the redacted (Defendant ABF's Exhibit 4) or the unredacted document

(Plaintiffs Exhibit # 7) rebuts Plaintiffs view that ABF loaded up its Board up to Carlisle

Board in this time frame to avoid recalling more expensive Carolina Freight employees

It is Plaintiffs' position the provision of Article 5, Section 5 controls only during

the interim period between any recall and the posting, contemporaneously or

subsequently, of a revised, permanent seniority roster.  This is a substantial area of

dispute.  In this case, the parties have agreed that, during the time frame of the recalls, the

permanent roster remained, as it existed prior to the first recall.  Thus the Plaintiffs were

placed at the bottom of the posted permanent seniority list, they were lead to believe, as a temporary expedient. When they could not obtain a commitment to assure restoration of their full seniority rights, grievances involved in these proceedings were lodged.

What is clear in the record is that the convoluted rights and provisions and liberations of the Change of Operations Committee were explained to Plaintiffs or others in layoff status; either at the time of their layoff or the time of the initial decisions in the Spring of 1995 nor at the time of the takeover of Carolina Freight by ABF during the late Summer, Early Fall of 1995 or Plaintiffs' intended at time of recall, nor was the permanent impact of Article 5, Section 5 explained at that time.

Significantly, both Defendant Virtue and another business agent for the Local Union, Charles Shugart, misconstrued the clear language of Article 5, Section 5, in their depositions, by indicating that the employee was obligated, under the language of that provision, to notify the employer and Union of their address every six (6) months. The language of Article 5, Section 5 only provides "…however the employer will only be required to make one transfer in any six (6) calendar month…" Obviously, every time an employee was recalled the permanent seniority roster could not be shaken or reconfigured. Thus, Plaintiffs believed that, at most the provisions of Article 5, Section 5 were temporary pending the issuance of a permanent seniority roster. In addition, the imposition of Article 5, Section 5 upon their return to work by the employer was after the fact when all Plaintiffs, on their own, contacted the employer to inquire about possible recall. The fact that the employer had made no effort to apply the seniority mechanisms for recall on its own or through the Union suggests, in fact, that as Plaintiffs assert, there

was a conspiracy to avoid the recall from layoff provisions and the dictates of Article 5, Section 1 (b).

14.     It is noted that the averments set forth in Paragraph 14 are not supported by direct reference to the Change of Operation document.  By way of further contention, Plaintiffs believe that the Change of Operation decision as reflected at 2 (a) of Plaintiffs Exhibits. Paragraph 1 (c) sub (2) provides

> "…a master inactive/laid off pool shall be created and shall consist of those road drivers who were in layoff status on August 11, 1995 at either ABF, Carolina, or Red Arrow regardless of why they were laid off…"

Thus, that language and the mandate of that language has never been implemented either by the Local Union or the employer.  The only documentation produced, during discovery, was a listing created as a result of the contact by Plaintiffs initiated on their own However, it does reflect the fact that recall was predicated upon the ad hoc contacts rather than any seniority principals as called for by the Contract or Change of Operations document.  Thus, it is Plaintiffs contention that even under the terms of the Change of Operation that their rights were ignored and improperly implemented by both the employer and the Unions.

15.     Admitted.

16.     It is acknowledge that the employer was able to produce an October 12, 1995, letter, "Dear Carolina Employee"; however, this proof does not specifically establish that the letter in question was actually sent to all of the Plaintiffs.  Furthermore, the document

as referenced in Undisputed Facts #16 is redacted and does not reflect the material

ostensibly attached to the letter in question.  Furthermore, a careful reading of the

October 12, 1995, letter establishes

    (a)  it was generated after the Carolina Freight related decisions by Plaintiffs

concerning their layoff status which occurred earlier in 1995 and

    (b)  further the letter is couched in present tense language, which suggests that the

        indication deals only with work available at the time.  "…if you desire to be

        offered available work…" (See Defendant ABF's Exhibit Dale-Decl.

        Attachment B.)


17.     Admitted


18.     Denied.  An examination of Article 5, Section 5, as reflected in the 1994-1998

Agreement versus the current collective bargaining agreement, discloses a change of

geographic area from conference to region and a change of pay status to "new hire" rate.

But, the record fails to disclose that the company or union advised the Plaintiffs, all of

whom were in layoff status under the prior agreement, that there were ostensible changes

in their status or rights pursuant to the modified language of the collective bargaining

agreement, which came into force and effect subsequent to their layoff.  This assumes,

arguendo, that the provisions of Article 5, Section 5 are applicable and completely

arbitrary. The Plaintiffs dispute because (a) because they were never advised of any

change and were paid under the language of Article 5, Section 5 as in force at the time of

the lay off.  Also, they believed that Article 5, Section 5 had only a temporary effect. The

election of Article 5, Section 5 of the changes in seniority status in Article 5, Section 5;
(b) because the provision is obviously annuity given the fact that over-the-road seniority
was not used as a basis for recall.  Thus, Plaintiffs position that the self-triggered recalls
were governed only temporarily under Article 5, Section 5 involves a material dispute in
the context of the Defendants' Summary Judgment Motion.

19.     Plaintiffs are without information or belief sufficient to respond to the averments
of Paragraph 19.  But, the fact that no seniority list of laid off drivers was maintained by
the either the employer or the Union calls in to question the existence of or at least the
application of any direction from Dale to unspecified "Carlisle management"  which was
in the very least, not in compliance, with any such direction.

20.     Admitted that Plaintiffs, on their own and initiative, contacted the Union and ABF
concerning recall from layoff during the period between October 30, 1998 and February
2, 1999.  The requests for "…Article 5, Section 5 transfer…" were directed and procured,
at the time by ABF to the Plaintiffs upon their contact with ABF.
        Admitted as to (a)- (p)

21.     Admitted, but it is specifically controverted by Plaintiffs that in the discussions
with Mr. Edenbo that their status under Article 5, Section 5 was clearly explained to them
at the time they returned to work.

22.     Admitted as to (a) through (p).

23.     Admitted, but Plaintiffs contend that it is irrelevant in view of the language allowing for seniority grievances to be filed within thirty (30) days.  Plaintiffs contend that the correct provision governing grievance related to seniority is set forth at Article 5, Section 4 which allows for the filing of seniority related grievances in conjunction with the biannual posting of a master seniority list at the facility in question.  Thus, Plaintiffs contends that reliance upon Article 43, Section 1 is misplaced.  Further, that Union's ultimate abandonment of that position and its concurrence with the employer at the Regional level with the employers position in effect obviates any ostensible representation.

24.     Denied, several filed within the seven-day period.

25.     Admitted.

26.     Admitted.

27.     Admitted, but it is further noted in connection with this Undisputed Fact as set forth by Defendant ABF that Daniel Virtue continued to be the operative agent for the Local and the International Union with respect to the status and disposition of these grievances and that he managed them at the Local level and the ERJAC level as well as arranged for their ostensible transfer to the National level.

28.    Admitted.

29.    Admitted.

30.    Admitted.

31.    Admitted, but by way of further relevant information, it is noted that the Plaintiffs contend, <u>inter alia</u>, that all of the employees recalled in this time period would have their seniority rights controlled by the disposition of either the Runk or the Nye grievance.

32.    Denied as stated.  The record makes it clear that the process involving the contact with ABF by Plaintiffs was at the direction of ABF's local management and local Union after Plaintiffs initiated contact and that the structuring of the return in terms of Article 5.5 was at the direction of the company and the union at that time; regardless of the nature of Article 5, Section 5 at the time of their layoff and regardless of any ostensible but unexplained alterations in right under Article 5.5. and at odds with the position that Article 5, Section 5 is a temporary basis administering seniority in the absence of the posting of a revised permanent generated list as mandated under Article 5, Section 4(d).

33.    Admitted, but by way of further relevant information.  It is disputed in the record that either the company or union indicated to the Plaintiffs what their permanent seniority date on the board would be.  To the contrary, Plaintiffs universally indicated that they

were told merely not to enter a seniority date on their call slip at the time that they returned to work.  This procedure created the impression that their seniority date would be included in the next permanent seniority posting.  Therefore, Plaintiffs controvert the suggestion that they knew their seniority position on the days they reported.

34.     Admitted.

35.     Admitted.

36.     Admitted.

Respectfully Submitted,

**Law Offices of Ahmad & Mirin**
2515 N. Front Street
Harrisburg, PA 17110
Phone: 717-909-4343

By: _____
Robert S. Mirin
Attorney ID No. 25305

Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

I, Robert S. Mirin, do hereby certify that on the _20th_ day of December,

2002, I did forward a copy of the foregoing Answer to the following person(s) and in the

following manner:

    VIA FIRST-CLASS MAIL, POSTAGE PREPAID:

        Jason Weinstock, Esquire
        **Ira H. Weinstock, P.C.**
        800 N. Second St., Suite 100
        Harrisburg, PA  17102

        Robyn Weiss, Esquire
        **Morgan, Lewis & Bockius**
        1111 Pennsylvania Avenue, NW
        Washington D.C. 20004

        James A. McCall, Esquire
        International Brotherhood of Teamsters
        25 Louisiana Avenue, N.W.
        Washington, D.C. 20001

        Robert S. Mirin, Esquire