

FILED
HARRISBURG, PA

JAN 1 3 2003

MARY E. D'ANDREA, CLERK
Per _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JEFFERY D. ALBRIGHT, et al. ) | |
| ) | |
| ) | |
| **Plaintiffs** ) | **Case No. 1:CV-00-878** |
| ) | **Judge Sylvia H. Rambo** |
| v. ) | |
| ) | |
| DANIEL A. VIRTUE, et al. ) | |
| ) | |
| **Defendants** ) | |
| ) | |

## REPLY MEMORANDUM TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.7 of the Middle District of Pennsylvania, Defendant ABF Freight System, Inc. ("ABF") hereby files this Reply Memorandum to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment.

# I. INTRODUCTION[1]

Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment ("Opposition") is filled with supposition and speculation, but fails to present any evidence, theory or argument to support their "hybrid" breach of contract claim against Defendant ABF and/or their breach of the duty of fair representation claim against Defendants Daniel A. Virtue ("Virtue"), Local 776, International Brotherhood of Teamsters ("Local 776"), and the International Brotherhood of Teamsters ("IBT")(collectively "Union Defendants"). Accordingly, this Court should grant Summary Judgment in favor of all Defendants.

# II. ARGUMENT

In their Opposition, Plaintiffs attempt to avoid a grant of summary judgment by simply asserting that "the factual record, before the Court below, was such that Plaintiffs, as the non-moving party, have established the existence of material

---

[1] As an initial matter, Plaintiffs' Opposition fails to comply with the Local Rules of this Court. Namely, the Opposition: (1) is not written in 14-point typeface (Local Rule 5.1(c)); (2) does not contain a 3-inch margin on the first page (Local Rule 5.1(b)); (3) exceeds the 15-page limit without prior authorization (Local Rules 7.8(b)(1) and (3)), or, in the alternative, does not include a word-count certification (Local Rule 7.8(b)(2)); and (4) does not contain a table of contents or a table of authorities.

disputed issues precluding summary judgment."[2]  Opposition at 6.  In fact, in their

Opposition and their Response to ABF's Statement of Undisputed Facts ("Pl.

Facts"), Plaintiffs fail to identify a single dispute of material fact.

### A.    Plaintiff Fails to Raise Any Genuine Issues of Material Fact.

In their Facts, Plaintiffs admit or agree to all facts sufficient to support an

entry of summary judgment in ABF's favor in this case.  Specifically, Plaintiffs

admit that:

- Carolina Freight Carriers Corp. ("Carolina") closed its Carlisle terminal in May 1995.  See Pl. Facts at ¶ 5.

- Eight of the Plaintiffs had transferred from Carlisle to other facilities prior to the closure and the other eight plaintiffs were laid off in Carlisle when the Carolina facility closed in May 1995.[3]  Id. at ¶¶ 6, 7.

---

[2]    It has been difficult for ABF to understand Plaintiffs' Opposition.  For example, Plaintiffs refer to the record "before the Court below," despite the fact that this case is presently before the District Court and there is no record before any court below.  In addition, throughout their Opposition and their Response to ABF's Statement of Undisputed Facts, Plaintiffs use partial sentences, out of context phrases, and Latin expressions that do not fit in the context in which they are used.  What is clear is that Plaintiffs have presented no evidence of a dispute of fact, and they cannot defeat summary judgment.

[3]    In their Facts, Plaintiffs admit that Plaintiffs Dietz, Harris, Landis, Minich, Nevins, Nye, Sgrignoli and Welker transferred to other Carolina terminals prior to the closure of the Carlisle terminal and were laid off from those facilities on September 25, 1995.  See Pl. Facts at ¶¶ 6 and 15.  Despite this admission, in their Response to the Union's Statement of Undisputed Facts, the Plaintiffs deny that six of the aforementioned eight Plaintiffs transferred to other facilities.  See Plaintiffs' Response to Union's Statement of Material Facts at ¶¶ 20, 36, 40, 52, 56, and 64.  The Plaintiffs cannot create a dispute

- At the time the Change of Operations Committee met in September 1995 to address the ABF-Carolina acquisition, ABF had 328 active employees in Carlisle and Carolina had 0 active employees. Id. at ¶ 12. Carolina's Carlisle terminal was not acquired by ABF and was not merged with any ABF terminal. Id.

- ABF had no transfer opportunities available in Carlisle for any of the Plaintiffs from September 1995 through the expiration of the 1994-1998 NMFA on March 31, 1998. Id. at ¶ 17.

- Between October 30, 1998 and February 22, 1999, all 16 Plaintiffs sent letters to ABF requesting work under Article 5, Section 5, and they received letters from ABF confirming their acceptance of work at ABF's Carlisle facility "in accordance with Article 5, Section 5." Id. at ¶ 20(a)-(p).

- The Plaintiffs filed grievances protesting their placement on the ABF seniority board. ABF took the position that the grievances were untimely. Local 776 did not agree with ABF and argued on behalf of the Plaintiffs at the terminal level hearing that their grievances were timely filed. Because the parties could not agree, the grievances were referred to the Eastern Region Joint Area Committee ("ERJAC") for a hearing on their timeliness. Id. at ¶¶ 22(a)-(p), 25.

- A decision by the ERJAC is "final, conclusive and binding." Id. at ¶ 26.

- Daniel Virtue notified the Plaintiffs about the ERJAC hearing and advised them that only the timeliness issue would be decided at the hearing. Id. at ¶ 27.

- ABF took the position at the ERJAC hearings that all of the grievances were untimely under Article 43, Section 1(c) of the Central Pennsylvania Over-the-Road and Local Cartage Supplemental Agreement to the NMFA ("Local Supplemental Agreement") because they were not filed within seven days of the grievants' reporting to work. Id. at ¶ 29.

- Local 776, in contrast to ABF, argued at the ERJAC hearing that Article 5, Section 4(d) applied to the Plaintiffs' grievances and that all their grievances

---

of fact by admitting facts asserted by ABF but denying the same facts asserted by the Union.

4

were timely filed within 30 days of the posting of the seniority list. Id. at ¶ 30.

- Virtue argued on the Plaintiffs' behalf at the ERJAC hearings, as did several of the Plaintiffs themselves. Id. at ¶¶ 31 and 32.[4]

- The ERJAC denied their grievances as untimely, finding that Article 43, Section 1(c) applied, and the Union notified the Plaintiffs of the disposition. Id. at ¶¶ 33-35.

Although Plaintiffs make additional averments or "further observations" in an attempt to generate factual disputes where there are none, these averments or observations are unsupported by the record, do not relate to matters material to the disposition of this matter, or simply are not statements of fact.[5] Plaintiffs' alleged "disputes of fact" appear to fall within three general categories: (1) that their recall rights are governed solely by Article 5, Section 1(b); (2) that ABF "loaded up" its seniority board before the Carolina acquisition in an attempt to avoid recalling allegedly "more expensive" Carolina employees; and (3) that the provisions of Article 5, Section 5 are temporary and somehow only operate in the interim

_____

[4]  In their response to paragraph 32 of ABF's Facts, Plaintiffs answer "denied as stated." A reading of Plaintiffs' response to paragraph 32 makes it clear that they are disputing a statement made by Virtue at the hearing. They are not disputing that Virtue argued on their behalf or that two Plaintiffs also spoke in support of their position at the hearing. Id. at ¶ 32.

[5]  Although ABF maintains that Plaintiffs' averments are immaterial for the purpose of deciding ABF's Motion for Summary Judgment, ABF does not concede that Plaintiffs' statements are correct and reserves the right to challenge such statements in future proceedings, if necessary.

between the date of "recall" and the posting of a permanent seniority list.[6]

Plaintiffs have no record support for any of these claims.

Article 5, Section 1(b) addresses seniority generally.  That provision must be read in accordance with the more specific seniority provisions contained in Article 5.  Plaintiffs apparently recognized that fact in their Complaint where they argued that Article 5, Section 2, rather than Article 5, Section 5, governed their placement on the ABF seniority board.  See Amended Complaint ¶¶ 16, 18, and 24.[7]  Now, Plaintiffs have abandoned their Article 5, Section 2 argument and claim—without any citation to record evidence—that their seniority rights are governed

---

[6]    Inexplicably, the Plaintiffs also "dispute" issues never mentioned by either ABF or the Union Defendants in their respective summary judgment pleadings.  For example, the Plaintiffs insist that there is no requirement that they notify the local union of their address every six months.  See Pl. Facts at ¶ 13 and Opposition at 7, 9.  The Plaintiffs also challenge "Defendants unsupported insistence" that the Change of Operations Committee "existed on an open-ended basis," despite the fact that none of the Defendants have made such an argument.  See Opposition at 7.  Plaintiffs cannot defeat summary judgment by disputing claims that are not even raised by the Defendants.  Curiously, Plaintiffs also spend a significant portion of their pleadings re-arguing the statute of limitations issue that was decided in their favor by the United States Court of Appeals for the Third Circuit on appeal from the District Court's original dismissal of this case as untimely.  Opposition at 6, 10-11.  Neither ABF nor the Union Defendants have pursued a statute of limitations argument since remand to this Court.

[7]    In addition, all of the Plaintiffs refer to and rely upon Article 5, Section 2 in their Affidavits attached to their Opposition, which were written and signed in October 2000.

exclusively by Article 5, Section 1(b).  See Opposition at 11; Pl. Facts at ¶ 12.  To accept Plaintiffs' claim as true, this Court would have to ignore the express language of Article 5, Section 5 of the NMFA and the decision of the Change of Operations Committee and instead accept at face value Plaintiffs' unsupported assertions.  The law is clear that a "nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Telephone Co. of Pennsylvania, 24 F.3d 508, 511 (3d Cir. 1994); see also Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Finally, Plaintiffs' "shifting sands" approach to ABF's alleged basis for liability is, in an of itself, demonstrative of the lack of merit to their claims.

Plaintiffs' claim that ABF "loaded up" its seniority board prior to the ABF-Carolina merger to avoid hiring "more expensive" Carolina employees is pure speculation directly contradicted by the record evidence.[8]  In their Facts, Plaintiffs claim that ABF placed 31 employees on its board in Carlisle "shortly before the official date of the merger."  Pl. Facts at ¶ 12.  In their Opposition, Plaintiffs contradict themselves and claim that "shortly before the merger" ABF added 24

_____

[8]    Plaintiffs' claim of a "conspiracy" between Virtue, ABF and the Union to avoid recalling the former Carolina employees, see Pl. Facts at ¶ 13 and Opposition at 8, is also completely unjustified and utterly without support in the record.

employees to its seniority board in Carlisle. Opposition at 8. In fact, neither of these claims are true, nor is there a factual dispute about them. ABF and Carolina merged on September 25, 1995. See ABF Facts at ¶ 15; Pl. Facts at ¶ 15. Plaintiffs' Exhibit VI, a June 6, 2002 ABF seniority list, shows that the last person hired by ABF in Carlisle prior to the merger (Dorman Godlove) was hired on November 27, 1994—ten months before the merger. ABF did not hire <u>any</u> road drivers in Carlisle in the months before the merger. In fact, the first person hired after the merger was Plaintiff Ronald Frombaugh on November 12, 1998. See Pl. Ex. VI.

Moreover, in stark contrast to Plaintiffs' claims that ABF wanted to avoid hiring "more expensive" former-Carolina drivers, Plaintiffs' own exhibit shows that <u>all</u> of the hires ABF made from November 1998 through February 1999 were former-Carolina drivers. <u>Id.</u> ABF did not make any other hires until April 27, 1999—<u>after</u> all 16 Plaintiffs had started working at ABF. <u>Id.</u> Plaintiffs cannot defeat summary judgment by manufacturing claims that have no record support. See <u>Childers v. Joseph</u>, 842 F.2d 689, 694-95 ("the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant.").

Finally, Plaintiffs have absolutely no factual support for their claim that Article 5, Section 5 is a temporary provision that "provides 'through the door status' pending the posting of the next permanent seniority list." Opposition at 7.

Plaintiffs never raised this baseless interpretation of Article 5, Section 5 in their

Complaint, in their affidavits, or during depositions.  Rather, this assertion appears

to be a last-minute, whole cloth creation by Plaintiffs' counsel.  The only purported

support for this assertion is Plaintiffs' supposed "belief" regarding the meaning of

Article 5, Section 5.  Pl. Facts at ¶ 13 ("Plaintiffs <u>believed</u> that at most the

provisions of Article 5, Section 5 were temporary . . . ."); <u>Id.</u> at ¶ 18 ("[T]hey

<u>believed</u> that Article 5, Section 5 had only a temporary effect.").  In contrast to

their unsupported beliefs, the express language of Article 5, Section 5

unequivocally provides that an employee who transfers in accordance with that

provision "shall be placed at the bottom of the seniority board for bidding and

layoff purposes, but shall retain company seniority for fringe benefits only."  Pl.

Ex. I, p. 24; Pl. Ex. III, p. 26.[2]  Plaintiffs' contrived and unsupported interpretation

of Article 5, Section 5 cannot contradict or overcome the Agreement's specific

language.  <u>See</u> <u>Smith v. Creative Resources, Inc.</u>, No. Civ. A 97-6749, 1998 WL

---

[2]    Plaintiffs claim that a "plain reading of the direct language of the contract"
supports their interpretation of Article 5, Section 5 as "temporary," but
notably fail to cite any language from the contract.  Opposition at 7.  In
addition, the Plaintiffs claim that the October 12, 1995 "recall letter"
suggested that Article 5, Section 5 was an interim measure, but cite no
language from the letter.  <u>Id.</u> at 9.  In fact, the letter states that "Carolina
employees who are laid off at Carlisle, Pa will have certain rights to future
work opportunities with ABF.  <u>Article 5, Section 5 of the NMFA addresses
those rights.</u>"  ABF Ex. 3B.  No plausible interpretation of this language
suggests that placement under Article 5, Section 5 would be temporary.

808605, at *2 (E.D. Pa. Nov. 23, 1998) (rejecting the plaintiff's "extreme interpretation" where it was "not supported by the language of the contract").

An examination of the facts submitted by all parties makes it clear that there is no dispute as to the material facts of this case that would preclude an entry of summary judgment for all Defendants. Plaintiffs fail completely to present any evidence in support of their claims. See Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992) ("Since [they] bear the burden of proof, [Plaintiffs] must make a showing sufficient to establish the existence of every element essential to [their] case, based on the affidavits or by the depositions and admissions on file.").

**B.   Plaintiffs Present No Evidence To Support Their Hybrid Section 301 Breach of the Collective Bargaining Agreement/Breach of the Duty of Fair Representation Claim.**

Lacking any evidence in support of their claim, Plaintiffs attempt to rely upon various "hybrid" Section 301 breach of contract/breach of duty of fair representation cases addressing issues totally unrelated to those presented in this case. Opposition at 15-18. Conspicuously absent from Plaintiffs' Opposition is any evidence or legal precedent to support a holding that Virtue, Local 776, or the IBT breached their duty of fair representation or that ABF breached the terms of the NMFA. Plaintiffs have failed to demonstrate that there are any genuine issues of material fact, and Defendants are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986).

1. **Plaintiffs Have Presented No Evidence To Demonstrate That The Union Defendants Breached Their Duty of Fair Representation.**

As detailed in ABF's Motion for Summary Judgment, to establish a breach of the duty of fair representation, a plaintiff must show that the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967). A union's actions are considered arbitrary only if "in light of the factual and legal landscape" they are "so far outside a wide range of reasonableness as to be irrational." <u>Air Line Pilots v. O'Neill</u>, 499 U.S. 65, 67 (1991); <u>see</u> <u>also</u> <u>Johnson v. United Steelworkers of America</u>, 843 F. Supp. 944, 946 (M.D. Pa. 1994).

In their Opposition, Plaintiffs devote considerable effort to summarizing duty of fair representation cases. Opposition at 15-18. Plaintiffs do not, however, point to any record evidence whatsoever to show that the Union Defendants have acted arbitrarily, discriminatorily, or in bad faith. Nor do they show how the cases which they discuss have any application in this context. Instead, the Plaintiffs rely exclusively on conclusory statements to support their claims. Opposition at 15 ("Here all the factors are present."); <u>id.</u> at 16 ("Plaintiffs <u>believe</u> the basic seniority rights have been egregious by disregard [sic]."); <u>id.</u> at 17 ("Here, while ERJAC proceedings are open, the analysis and result are so cryptic as top [sic] be 'secret.'"; "All of the above components are suggested by Plaintiffs' Affidavits and documents and mandate dismissal of these motions."). Yet, Plaintiffs cite no

evidence to support their claims.  See Harter, 967 F.2d at 852 (granting summary judgment where plaintiff "did nothing in opposition to [defendant's] motion except to make conclusory statements in his brief, citing no documentary evidence in the record that would support his claim."); see also Gilberton Power Co. v. United States, No. 4:CV-99-1822, 2002 WL 323815 (M.D. Pa. Jan. 18, 2002) ("the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor").

In fact, the evidence in the record conclusively demonstrates that Local 776 fairly represented Plaintiffs at all stages of the grievance process.  See ABF's Memo at 7-9.[10]  As noted above, the Plaintiffs admit that Local 776 disagreed with ABF's position regarding the timeliness of their grievances.  Pl. Facts at ¶ 25, 30-32.  Plaintiffs admit that Virtue argued and filed a brief on their behalf at the ERJAC level, and directly challenged ABF's position.  Id. at 30-32.  In addition, Plaintiffs admit that the ERJAC decision was "final, conclusive and binding with no appeal."  Id. at 26.[11]  Plaintiffs' belief that the ERJAC decision was wrong does

---

[10]    "ABF's Memo" refers to ABF's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment.

[11]    Throughout their pleadings, Plaintiffs appear to suggest that Virtue's forwarding of their appeal letters to the IBT for further consideration is evidence of a breach of the duty of fair representation.  Opposition at 6-7. This claim has no basis in the factual record or cited case precedent. Moreover, the claim makes no sense.  If anything, Virtue's forwarding of the appeal letters reflects his continued representation of the Plaintiffs' interests.

not create a dispute of material fact and cannot defeat summary judgment.

McKnight v. School District of Philadelphia, 171 F. Supp.2d 446, 448 (E.D. Pa. 2001) ("Unsubstantiated and subjective beliefs and opinions are not competent summary judgment evidence.") (citation omitted).

There is simply no evidence to show that the Union Defendants acted arbitrarily, discriminatorily, or in bad faith. In the absence of such a finding, Plaintiffs' claims against ABF cannot proceed. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567-68 (1976); DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983). Accordingly, summary judgment should be granted for all Defendants.

### 2. Plaintiffs Have Presented No Evidence To Establish That ABF Breached the NMFA.

Plaintiffs fails to provide any evidence to support their claim that ABF breached the terms of the NMFA. First, as demonstrated above, Plaintiffs cannot establish that the Union Defendants breached their duty of fair representation. Accordingly, the final and binding decision of the ERJAC denying Plaintiffs' grievances as untimely must be upheld and is immune from challenge. See Hines, 424 U.S. at 567; Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66 (3d Cir. 1985)(stating that the district court must defer to a joint committee decision unless the union breached its duty of fair representation before the committee).

Second, Plaintiffs fail to present any evidence to show that ABF violated the

NMFA when it rejected the Plaintiffs' grievances as untimely under Article 43, Section 1(c) of the Local Supplemental Agreement. In their pleadings, Plaintiffs continue to argue that Article 5, Section 4(d), not Article 43, Section 1(c) governs the timeliness of their grievances. The Union—on behalf of the Plaintiffs—unsuccessfully pursued this argument at both the terminal level and ERJAC hearings.[12] Plaintiffs cannot avoid summary judgment on their breach of contract claim simply because they believe—without any evidentiary support—that their interpretation of the contract is correct and ABF's interpretation is wrong. See Matsushita Electric, 475 U.S. at 586; McKnight, 171 F. Supp.2d at 448.

Finally, Plaintiffs' claim that ABF breached the NMFA by placing Plaintiffs at the bottom of the seniority board is wholly unsupported by any record evidence. As the undisputed record evidence makes clear, ABF did not acquire Carolina's closed Carlisle terminal; therefore, the Plaintiffs only had the right to transfer to ABF's Carlisle terminal pursuant to Article 5, Section 5. The mere fact that Plaintiffs assert—based solely on their own belief—that the general seniority provisions of Article 5, Section 1(b) somehow provide greater seniority rights is not sufficient to defeat summary judgment. See Liberty Lobby, Inc., 477 at 250-52. Other than disagreeing with their placement on the ABF seniority board,

---

[12]   The Plaintiffs' claim that the Union failed to challenge ABF's position, Opposition at 7, is flatly contradicted by substantial record evidence and the Plaintiffs' own admissions. Pl. Facts at ¶¶ 30-32.

Plaintiffs have provided no basis for finding that ABF breached the NMFA.

As the record makes clear, this case presents no genuine issue of material fact, and Defendant ABF is entitled to judgment as a matter of law.

## III.   CONCLUSION

For the foregoing reasons, and those previously stated in ABF's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment, Defendant ABF respectfully requests that this Court grant ABF's Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, with prejudice.

Date: January 13, 2003          Respectfully submitted,

Joseph E. Santucci, Jr. (*pro hac vice*)
Robyn B. Weiss (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202)739-5398

Vincent Candiello
MORGAN, LEWIS & BOCKIUS LLP
One Commerce Square
417 Walnut Street
Harrisburg, PA 17101-1904
(717) 237-4000

Attorneys for Defendant
ABF Freight System, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January 2003, a copy of Defendant ABF Freight System, Inc.'s Reply Memorandum to Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment was served via regular mail on the following:

> Robert S. Mirin
> AHMAD & MIRIN
> 8150 Derry Street, Suite A
> Harrisburg, PA 17111
>
> James A. McCall
> Special Counsel
> INTERNATIONAL BROTHERHOOD OF
> TEAMSTERS
> 25 Louisiana Avenue, N.W.
> Washington, DC 20001
>
> Ira Weinstock
> Jason Weinstock
> IRA WEINSTOCK, P.C.
> 800 N. 2nd Street
> Harrisburg, PA 17102

Kim Luisi